THE STATE OF MISSOURI, Respondent, v. SOLOMON ROSE, Appellant.

*Juror.*—A juror who has formed or declared an opinion upon the matter in issue is competent to serve, if the opinion was founded only on rumor and did not bias or prejudice his mind. (R. C. 1855, p. 1191, § 14.)

*Instructions.*—It is the duty of the court to refuse instructions having no application to the case as made by the issues and the evidence; and to give plainly expressed instructions to assist the jury in the application of the evidence given.

*Appeal from Clark Circuit Court.*

The opinion sufficiently states the facts of the case.

The following are the instructions given for the State:

1. The defendant is charged with murder in the first degree, by having wilfully, deliberately, and premeditatedly killed Lorenzo D. Barlow. The word "wilful," as here used, means intentional, not accidental. The word "deliberately" means a cool state of the blood; that is, not a heated state of the blood caused by lawful provocation; and the word "premeditatedly" means thought of beforehand—any time, no matter how short. The word malice means a wrongful act done intentionally, without just cause or excuse.

2. If the jury believe from the evidence in the cause, that

the defendant wilfully, deliberately, and premeditatedly, as above defined, struck the deceased with a spade, on or about the 30th of January, 1858, at the county of Clark, thereby giving to the said Barlow a mortal injury, of which he died on the night of said day, it will be their duty to find the defendant guilty of murder in the first degree.

3. If the jury believe from the evidence in the cause that the defendant Rose did not strike the said Barlow with the specific intent to kill at the time, but with the design maliciously to inflict upon the said Barlow great bodily harm; and that the said Barlow came to his death by a wound inflicted under such circumstances, then such killing is murder in the first degree, and the jury should so find.

4. Although the jury may believe from the evidence in the cause that the deceased man Barlow used insulting and opprobrious language towards the defendant Rose, yet this afforded neither justification, provocation, palliation, or excuse, for the striking by Rose; and if the jury find from the evidence in the cause that the defendant Rose struck the deceased under such circumstances with a spade, and that it was an instrument likely to produce death or great bodily harm, and that he did so without the intent to kill, but with the intent maliciously to inflict upon the said Barlow great bodily harm, and that he came to his death by an injury so inflicted, then the defendant is guilty of murder in the first degree, and the jury should so find.

5. If the jury find from the evidence in the cause that the said Barlow had a knife in his hand, in front of Crane's grocery, and that high words passed between the parties; and that, afterwards, the said Barlow started up north, and that defendant Rose went some distance south, and then returned with a spade and followed Barlow and struck him, then he, Rose, was not justifiable or excusable in so doing, nor was there any provocation. And, if the jury find from the evidence in the cause that the defendant Rose struck the deceased Barlow with a spade under those circumstances, and that it was an instrument likely to produce death or great

bodily harm, and that he struck without the intent to kill, but with the intent maliciously to inflict great bodily harm upon the said Barlow, and that the said Barlow came to his death by an injury so inflicted, then defendant is guilty of murder in the first degree, and the jury should so find.

6. If the jury entertain a reasonable doubt of the guilt of the defendant, they should acquit. But a reasonable doubt to authorize an acquittal, must be a substantial doubt arising out of the evidence in the cause, and not a mere possibility of defendant's innocence.

7. The jury have a right, under the present indictment, to find the defendant guilty of murder in the first or second degree, or of manslaughter in the first, second, third or fourth degree.

8. If the jury find the defendant guilty of murder in the first degree, they will simply so state in their verdict. If the jury find the defendant guilty of murder in the second degree, they will so state in their verdict, and assess his punishment at not less than ten years' imprisonment in the penitentiary.

9. If the jury find the defendant guilty of manslaughter, they will state the degree in their verdict.

10. If the jury find defendant guilty of manslaughter in the first degree, they will assess his punishment to imprisonment in the penitentiary not less than five years; if in the second degree, by a like imprisonment not less than three nor more than five years; if in the third degree, not exceeding three nor less than two, or by imprisonment in the county jail not less than six months, or by a fine of not less than five hundred dollars, or by both a fine not less than one hundred dollars, and imprisonment in the county jail not less than three months; if in the fourth degree, by imprisonment in the penitentiary two years, or in the county jail six months, or a fine of not less than five hundred dollars, or by both a fine of not less than one dollar and imprisonment in the county jail not less than three months.

Instructions offered for defendant :

1. If the jury believe from the evidence that, at the time of the difficulty, the deceased was attempting to commit, on the person of the defendant, great bodily harm, and he struck in defence of his person, then they should find him not guilty.

2. Although the jury may believe from the evidence that the deceased retreated a short distance before the rencounter, yet if they believe that such retreat was resorted to by the deceased for the purpose of drawing the defendant into the difficnlty, and as a means of·inflicting upon him great bodily harm, and at the time the blow was inflicted the deceased was in the attitude and ready to strike the defendant with a knife, then they should find the defendant not guilty.

3. If the jury believe that the blow was given by Rose under a reasonable apprehension that the deceased was about inflicting upon him great bodily harm, then there was no malice, without which there can be no murder.

4. The jury have the right to take into consideration the acts and threats of the deceased at the time of the difficulty as showing the state of the mind of the deceased towards the defendant.

5. If the jury believe that there is a reasonable probability that the deceased came to his death by any other means than at the hands of defendant, they should find him not guilty.

6. The law presumes the innocence of the accused until his guilt is clearly made out to the exclusion of a reasonable doubt.

7. If the jury, upon an examination of the whole case have a reasonable doubt of the guilt of the defendant, they should acquit.

Of which instructions the court refused numbers one, two and three, and gave numbers four, five, six and seven.

The court, on its own motion, gave the following .instructions:

1. If the jury, from the evidence in the cause, entertain a reasonable doubt upon any material fact constituting the offence charged in the indictment, then the defendant is en-

titled to the benefit of that doubt, and it will be their duty to find the defendant not guilty.

2. If the jury should find from the evidence that Rose struck Barlow with a spade, but without any intent to kill or do him, the said Barlow, any great bodily harm, then they cannot find the defendant guilty of murder in the first degree.

*Givens, Bush & Cowgill*, for appellant.

I. The court erred in retaining upon the panel the names of Turner, Davis, and Hamersly, returned by the sheriff. The first two had formed and expressed opinions as to the guilt or innocence of the defendant, founded, as they said, upon rumor; but they had heard a great deal said about the matter, and if the evidence turned out as they had heard it, their minds were made up and fixed,—having thus formed opinions when not under oath, and not having the law arising upon the facts expounded to them by the court. Hamersly had heard the circumstances detailed to him by a witness, but had formed no opinion as to the guilt or innocence of the defendant. Neither of the jurors were asked if they had formed any opinion upon any material fact in the case, which they all may have done from aught that appears from the evidence. (R. C. 1855, p. 1191, § 14.)

II. The second instruction tells the jury that if the defendant struck the deceased with a spade wilfully, deliberately and premeditatedly, and he died of the wound, then defendant was guilty of murder in the first degree, without telling them that it should have been done in malice, and with the intention to kill, both of which are essential ingredients in the crime of murder in the first degree. (Bonner v. State, 5 Mo. 379–80.)

III. The third instruction tells the jury that if the defendant did not strike the deceased with the specific intent to kill, but with the design maliciously to inflict upon him great bodily harm and that death ensued, then defendant was guilty of murder in the first degree. Now, it is insisted that

striking another even with a deadly weapon, without the intent to kill, but with the intent to do great bodily harm, and death ensues, is not murder in the first degree under our statute. The statute defining murder in the first degree, it is believed, was taken from the Pennsylvania statute upon the same subject. Under that statute, the courts of that State have decided that giving one a mortal blow, but with the intent only of inflicting great bodily harm, is not murder in the first degree—that the intent to kill must exist. (Wharton's Crim. L., 3d ed., 494.)

IV. Instructions numbered one, two, and three, asked for the defendant, should have been given. They present the law substantially as defined by the Revised Statutes of 1855. (4th sec. of the act "Crimes and Punishments," art. 2, p. 559.) The first instruction was manifestly proper, as it presents the law of self-defence at common law independent of the statute.

*Voullaire*, for the State.

I. The court properly refused to strike from the panel the names of the three jurors, Turner, Davis and Hamersly. They were competent jurors. (2 R. C. 1855, p. 1191, § 14; State v. Baldwin, 12 Mo. 223; State v. Davis, 29 Mo. 391.) If any objection could be made to the three jurors, the defendant should have challenged them for cause.

II. In the instruction marked number one, given on behalf of the State, the meaning of "deliberately" is simply defined, as it is in all instructions and in the law books. It is the best definition of that word as adapted to criminal law. The court, in that instruction, does not undertake, as in the two cases cited by defendant, (State v. Dunn, 18 Mo. 419, and State v. Jones, 20 Mo. 58,) to instruct the jury upon any other point or legal proposition in connection with said word. And the court afterwards, in instructions marked number four and five, defines what lawful provocation is, as far as the case is concerned and the evidence in the cause will permit. The court ought not to instruct the jury upon all questions

of lawful provocation; but must confine itself to such questions of lawful provocation as appears by the evidence. The question of lawful provocation is a question of law, and may differ according to the nature of the case and testimony. What has been said about the word "deliberately" can also be applied to the word "malice," as defined in said instruction. (State v. Schultz, 25 Mo. 128–151; State v. Harelin, 25 Mo. 111, 121, 126–7; State v. Hays, 23 Mo. 287, 325; Conn v. Green, 1 Ashmead, 289–299, ("The first inquiry," &c.)

III. Instruction number two, given on behalf of the State, is correct. It is a continuation of the first instruction, which defines murder in the first degree, and must be taken in connection with it. The jury in passing upon this second instruction must have had the first one in view. Besides, under our statutes, every deliberate or intentional killing is murder in the first degree, and the words "malice and intention to kill," complained of by defendant to have been left out in said second instruction, are embodied in the words "wilfully, deliberately and premeditatedly." If the jury should have found defendant guilty under that instruction, they would have to find that the act was done with malice and intention to kill. (State v. Dunn, 18 Mo. 419–424; State v. Phillips and Ross, 24 Mo. 475–487; Penn v. Honeyman, 1 Add. 147–8; Conn v. Dougherty, 1 Browne, 18.)

IV. The third and fourth instructions are also correct. Under our statutes it is not necessary that the party intended only to kill, to constitute murder in the first degree—giving a fatal stroke wilfully and maliciously, and with intent to inflict great bodily harm, is sufficient. Defendant contends that our law of murder in the first degree is the same as the one of Pennsylvania. That proposition is not entirely correct, because in our statute the words "or other felony" are added to the definition of the crime. (State v. Neuslin, 25 Mo. 111, 121, 126, &c.; 1 Mo. Stat. 1858, p. 558, § 1; Whart. Crim. L., p. 421, Law of Penn.)

V. The fifth instruction is also correct. Witnesses had testified somewhat differently about what had taken place before

State v. Rose.

the killing. It was the province of the jury to pass upon all the evidence adduced, which, of course, they must have done; and it was proper for the court to instruct the jury on such parts of the evidence as appeared to him clearly proved, and which he presumed were offered in justification of the murder, and to tell the jury, if they find such facts from the evidence, that they do not constitute any lawful provocation. (State v. Hays, 23 Mo. 287–318, 3d instruction; State v. Dunn, 18 Mo. 419–425; People v. Shorter, 2 N. Y., Comstock, 193–202.)

VI. The court properly refused to give instructions one, two and three, asked by defendant. They do not contain the law of self-defence, and there was no evidence that authorized instructions on the question of justifiable homicide. (1 Mo. Stat. 1855, p. 559.) Instruction number four, given on behalf of defendant, cures sufficiently such error, if any occurred by the court, in refusing to give instructions one, two and three.

VII. The defendant having been acquitted of murder in the first degree and convicted of murder in the second, he appeals only from this last verdict, and cannot complain of any errors having occurred either by the court giving improper instructions as to murder in the first degree, or refusing to give proper instructions concerning that crime in that degree. The jury, by their verdict, have resolved all wrongs or errors, if any existed, in favor of defendant. In reality, there is no instruction on the subject of murder in the second degree, except the one reciting what the punishment is for murder in the second degree; and the jury, by their verdict, must have found the defendant guilty under that instruction only which is correctly stated. The question of murder in the first degree is not before this court, and defendant cannot be tried for that crime again.

BATES, Judge, delivered the opinion of the court.

The defendant was indicted for murder in the Circuit Court of Clark county, at the September term, 1858. He

was tried at the April term, 1861, and found guilty of murder in the second degree, and sentenced to be imprisoned in the penitentiary for ten years.

It appears by the record that thirty-six persons, summoned as jurors, were sworn on their *voir dire*, when one of them, James Turner, being examined, stated that he had formed an opinion as to the guilt or innocence of the accused ; that that opinion was founded upon rumor, and was not such as to prejudice or bias his mind so that he could not give the defendant a fair trial. He further stated that he could hear the evidence, and give the defendant a fair and impartial trial, regardless of the opinion thus formed from rumor; that he had heard the circumstances attending the killing by several persons, but did not know them to be witnesses; that he did not know who the witnesses were; and if the case should turn out to be as he had heard it, his mind was fixed and made ; and that the opinion he had first formed remained still, and that he had never heard any person talk about the case who pretended to know any of the facts themselves, but they spoke of them as though they had heard them from others.

The defendant moved that the name of the juror be stricken from the panel, which motion the court overruled. The name of the juror (Turner) appears in the list of the jurors who tried the case.

The 14th sec. of art. VI. of Practice in Criminal Cases (2 R. C. 1855, p. 1191,) provides that "it shall be good cause of challenge to a juror that he has formed or delivered an opinion on the issue or any material fact to be tried ; but if it appear that such opinion is founded only on rumor, and not such as to prejudice or bias the mind of the juror, he may be sworn."

The case of the juror (Turner) comes fully within the exception in that section, and he was a competent juror, and the court committed no error in refusing to strike his name from the list.

When E. B. Davis, another of the panel of thirty-six, was examined, he stated that he had formed and expressed an

State v. Rose.

opinion; that his opinion was founded on rumor, but he did not think it would be in his way of giving the accused a fair and impartial trial, according to the law and evidence, regardless of the opinion he had formed; that he had the same opinion still, and that it would take evidence to remove it; that he had heard a great deal said about the circumstances of the case, and if it should turn out in evidence as he had heard, his mind was made up on the subject of the guilt or innocence of the accused; but he had never heard anybody talk about the case who pretended to know anything of the facts themselves—they spoke as though they had heard these things from others. The defendant moved that the name of this juror be stricken from the pannel, which the court overruled. The name of this juror does not appear in the list of those who tried the case, nor does it appear that he was challenged either for cause or peremptorily, nor anything from which it can be inferred that the defendant has suffered any injury by his being retained on the list of thirty-six. His case does not come within the exception in the clause of the statute above quoted. It does not appear affirmatively that his opinion was not such as to prejudice or bias his mind, and in that, does not fulfill the requirements of the statute; but, as he was not upon the jury which tried the case, and the defendant was not otherwise injured by the action of the court in reference to him, there is in it no reason to reverse the judgment.

When G. R. Hamersly, another of the thirty-six, was examined, he stated that he had not formed or expressed an opinion in regard to the guilt or innocence of the accused, but that he was present at one time when Jonathan Hewitt, a witness for the State, gave a history of the transaction; but that he had formed no opinion after hearing the history of the matter; that Hewitt was not talking to him, and he did pay much attention to what he said, nor did he remember the conversation now; that he had no opinion as to the guilt or innocence of the defendant, or upon any material issue in the case, and that what he had heard would not be in his

way in making up his verdict. The court overruled the motion made by the defendant to strike his name from the list. His name does not appear in the list of the jurors who tried the case, nor does it appear that he was challenged either for cause or peremptorily. He was a qualified juror; but if he were not, the defendant has suffered no injury on his account.

The case being tried, it appeared in evidence that the defendant and the deceased were engaged in a verbal altercation, during which the deceased held in his hand an open knife concealed behind his person; that the defendant advanced as if to strike the deceased, when a bystander called to him that deceased had a knife. Defendant then sprang back, and throwing off his coat went a few steps (southward) and picked up a spade which was lying there on a pile of sand. When the defendant sprang back from the deceased, he (deceased) started in the opposite direction, (northward,) retreating slowly, walking backward, leading his horse by the bridle, and still holding the knife in his hand. When the defendant picked up the spade, he immediately turned and pursued the deceased until he overtook him, and struck him on the head with the spade a blow which caused his death a few hours afterward.

The court gave to the jury ten instructions on the part of the State, two on its own motion; and four on the part of the defendant; and refused three asked by defendant. The first five instructions given on the part of the State, all define and have reference only to the crime of murder in the first degree. The defendant was found guilty of an inferior grade of crime, and it is not perceived how the defendant could have been injured by them, or upon what grounds he can complain of them. It is true that the jury may have been induced by those instructions to find the defendant not guilty of the first degree of murder, which is their verdict as to that degree; and he thus has the advantage of them, and has suffered no injury in regard to the charge of that degree of murder. As they have no reference whatever to the de-

gree of murder of which he was found guilty, they could not have influenced the jury in so finding their verdict. Therefore, no opinion is given as to the legal propriety of those instructions. The same remarks apply to the second instruction given by the court on its own motion.

The last five instructions given on the part of the State, and the first given by the court on its own motion, are not specifically objected to in this court, and having examined them carefully, we find no error in them.

The three instructions prayed by the defendant, and refused by the court, refer entirely to the law of self-defence, and therefore had no application to this case, in which there was no evidence at all that the killing was done in self-defence. Instructions should, in reality, be aids to the jury in forming a correct verdict, and it is as much the duty of the court to refuse instructions which have no application to the case and which might confuse the jury, as it is to give plainly expressed instructions in reference to the evidence given to assist the jury in its application.

Judgment affirmed. Judge Bay concurs. Judge Dryden having been of counsel in the court below, did not sit in this cause.