## THE STATE v. CORE, *Appellant.*

| 70 | 491 |
| 98 | 404 |
| 70 | 491 |
| 47a | 233 |
| 70 | 491 |
| 111 | 500 |
| 70 | 491 |
| 131 | 494 |

1. **Competency of Jurors who have formed an Opinion.** Several of the jurors, being examined on the *voir dire*, stated that they had formed and expressed opinions, which would require evidence to remove. They also stated that they knew nothing of the facts, and had not talked with any witness in the case; that their opinions were based upon what they had heard from others, and were not of such a character as would affect them in rendering a verdict; that they would be governed by the law and the evidence, and thought they could decide the case according to the law and the evidence. *Held*, that under section 13, page 1103, Wag. Stat., they were competent to sit upon the trial of the case.

2. **Practice, Criminal:** SENTENCE UPON GENERAL VERDICT. A general verdict of guilty upon an indictment in several counts, all relating to the same transaction, but charging different degrees of the same offense, will sustain a sentence for the highest degree charged, especially in a case where all the evidence shows that the offense could only have been of that degree, and the instructions relate only to that degree.

*Appeal from Laclede Circuit Court.*—HON. R. W. FYAN, Judge.

AFFIRMED.

*Joseph Wisby* for appellant.

*J. L. Smith* Attorney-General, for the State.

NORTON, J.—At the February term, 1879, of the circuit court of Laclede county, an indictment was found and returned by the grand jury into said court, charging defendant with killing George E. King. The indictment contained three counts, in the first of which, defendant is charged with murder in the second degree, and in the second and third counts of which he is charged with murder in the first degree, in killing said King. At the August term, 1879, the cause was tried, and the jury returned into court the following as their verdict: " We, the jury, find the defendant guilty as charged in the indictment." Upon this verdict the court entered its judgment sentencing defendant to the punishment of death by hanging. Although it is shown by the bill of exceptions that exceptions were taken to almost everything done during the progress of the trial, but two of them are of sufficient importance to demand the attention of defendant's counsel in his brief, and they are, first, that the court erred in accepting on the panel of forty jurors persons who, by reason of having formed opinions, were not qualified to serve; second, that the verdict of the jury does not authorize the judgment rendered upon it.

As to the first point it may be observed that twenty of the forty persons summoned as jurors being examined on their *voir dire* stated that they had formed and expressed opinions, but that said opinions were based upon what they had heard from others, and that if they had talked to any person who

1. COMPETENCY OF JURORS WHO HAVE FORMED AN OPINION.

was a witness in the case, they did not remember it; that they thought they could decide the case according to the law and evidence; that they had not conversed with witnesses, nor did they know the facts; that their opinions were not of such a character as would affect them in rendering a verdict, but that they would be governed by the law and evidence; that it would require evidence to remove said impressions made on their minds. The jurors thus answering, were accepted by the court as qualified, over the objection of defendant, and this action is claimed to be erroneous, and violative of section 13, Wag. Stat., 1103, which provides "that it shall be good cause of challenge to a juror that he has formed or delivered an opinion on the issue, or any material fact to be tried; but if it appears that such opinion is founded only on rumor, and not such as to prejudice or bias the mind of the juror, he may be sworn."

Under said section the precise question now presented to us was considered by this court in the case of *Baldwin v. The State*, 12 Mo. 224, and it was held that the trial court committed no error in accepting a juror as qualified, who, upon an examination touching his qualifications, made statements substantially the same as those made by the jurors in the present case and copied above. So in the case of *State v. Davis*, 29 Mo. 391, the question again arose, and in the disposition of it, it was observed: "The jurors were examined upon their *voir dire*, and stated that they had formed an opinion, but it was upon rumor, and was not such as to bias or prejudice their minds. This has been the law in this State, and such jurors have invariably been held competent. * * Such is the growing aversion to serving on juries that unless this rule is adhered to, it will be impossible to obtain competent jurors." The same principle was declared in the case of *State v. Rose*, 32 Mo. 346.

The second point relied upon by defendant is, that the indictment contains three counts, in one of which defend-

The State v. Core.

2. PRACTICE, CRIM-
inal: sentence
upon general ver-
dict. ant is charged with murder in the second degree in killing deceased, and in the other two with murder in the first degree; and that the general verdict of "guilty as charged in the indictment," returned by the jury, did not justify the court in rendering judgment sentencing defendant to the punishment prescribed for murder in the first degree. Under our statutes there are two degrees of the crime of murder, and we think it is evident that the different counts in the indictment relate to one and the same transaction, to-wit: the killing of King, the deceased, and we are of opinion that the action of the court in sentencing defendant upon the general verdict of guilty returned by the jury on said indictment to the punishment affixed to the highest degree of the crime charged therein, was rightful. All the authorities we have examined sustain this view, and we have not been cited to any which oppose it.

It is laid down in § 3048, 2 Whart. Crim. Law (5 Ed.) "When there is a general verdict of guilty upon several counts relating to the same transaction, the practice is to pronounce judgment on the count charging the highest grade of offense." "When counts are joined for offenses different but not positively repugnant, the practice is to sentence on the count containing the offense of the highest grade." 3 Whart. Crim. Law, (7 Ed.) § 3177. "On an indictment containing two counts relating to the same transaction, where a general verdict of guilty is rendered, such a verdict is in effect a finding as to both counts, the lesser crime being thus merged in the greater, and judgment must be for the greater." 1 Whart. Crim. Law, (7 Ed.) § 421.

In the case of *State v. Pitts*, 58 Mo. 558, in disposing of the question whether a general finding of guilty when an indictment contains three counts will support a judgment, it was observed, "that when, as in the case at bar, the several counts relate to the same transaction, and are framed on different sections of the Statute to meet the ex-

igencies ·occurring at the trial, then a general finding which does not exceed in the punishment it assesses the maximum of that specified in any section on which any count is based will be permissible and afford no ground for arresting the judgment based thereon." In case of *State v. Nelson*, 14 Rich. (S. C.) 172, it was held that when an indictment charges the same transaction in one count as a felony and in another as a misdemeanor of such nature that the latter may be or is included in the former, it is merged in it if the higher offense be consummated : and the jury, even if there were no charge of the less offense in a separate count, might convict of this under the greater, if the evidence, in their judgment warranted no more. A general verdict of guilty is understood to find the higher offense if there is testimony to support it, and the finding of such a verdict is not a ground for new trial." So in case of *Manly v. State*, 7 Maryland 148, in passing upon the question of the effect of a general verdict of guilty on an indictment with two counts alleging offenses of different degrees relating to the same transaction, it is observed : "that the general practice in England and in this country, with very few exceptions, has been to pass judgment on general verdicts in these cases according to the count charging the highest grade of offense." So in the case of *State v. Hooker*, 17 Ver. 669, where it was insisted that the indictment was insufficient to sustain a judgment upon a general verdict because different grades of offenses were charged in different counts, requiring different punishments, it was held that "the verdict being general it is to be understood that the jury found the respondent guilty upon all the counts : and if any one or more of the counts is sufficient the court will render judgment upon such as are good ; if all are good then judgment will be rendered upon the count charging the highest offense." So in the case of *State v. Hood*, 51 Me. 363, it was held that "when one and the same criminal transaction is charged in different counts alleging the commission of different grades of the same

offense, but one penalty will be awarded, and, upon a general verdict of guilty, it will be the punishment appropriate to the highest grade. The judge who tries the case must necessarily know whether the counts and the evidence offered in support of them relate to one or more offenses, and, where sentence has been passed it is to be presumed that the proper punishment was awarded." The same principle is announced in the following cases: *Dean v. The State*, 43 Ga. 218; *State v. Fuller*, 34 Conn. 299; *People v. Shotwell*, 27 Cal. 394; *Cook v. State*, 24 N. J. L. 843.

Besides this, the instructions given by the court related only to murder in the first degree, and under the evidence defendant was either guilty of murder in that degree or nothing, and so the jury were in effect directed. No instruction relating to any other degree of homicide would have been warranted by the evidence. There was no witness to the tragedy. The body of deceased, shot in two places, with the skull beaten till it was fractured, was found one-quarter of a mile from where he lived and about 100 yards from a road which passed his house. All the evidence, which was circumstantial, tends strongly, if not conclusively, to show that about one o'clock of the day on which the tragedy occurred, King, the deceased, who was returning home from a neighbor's house one-half mile distant from his own, was met in the road and shot by the defendant, and then pursued about 100 yards and his skull beaten till it was fractured. Perceiving no error in the record the judgment is affirmed. All the judges concur.