THE STATE, *Appellant*, v. KELM.

**Criminal Law**: "INFORMATION." The term "information," as used in section 12, article 2 of the constitution of 1875, is to be understood in its common law sense, *i. e.*, a criminal charge exhibited by the attorney general or other proper officer. The affidavit of a private individual is not an information, and will not, therefore, support a prosecution for crime.

*Appeal from Jefferson Circuit Court.*—HON. L. F. DINNING, Judge.

AFFIRMED.

*D. H. McIntyre*, Attorney General, for the State.

*J. H. Vail* for respondent.

PHILIPS, C.—This is a prosecution for petit larceny instituted in justice's court on the affidavit of a private citizen. On a trial had therein the defendant was fined $1. From this judgment he appealed to the circuit court, where, on a trial *de novo*, he was again found guilty and fined $10. The circuit court sustained a motion in arrest of judgment for certain defects in the proceedings unnecessary to particularize, as our decision is placed ·upon other grounds fatal to the proceeding. The State has brought the case here on appeal.

Section 12, article 2 of the State constitution declares that "no person shall, for felony, be proceeded against criminally otherwise than by indictment, except in cases arising in the land or naval forces, or in the militia when in actual service in time of war or public danger; in all other cases offenses shall be prosecuted criminally by indictment or information as concurrent remedies."

In *Ex parte Slater*, 72 Mo. 102, this court held that the word "indictment," as used in said section, "has a well defined meaning, and must be accepted and understood as having been inserted in the constitution with the meaning

attached to it at common law." The court then quoted from Bacon's Abridgement and other common law text-writers to show what were the qualities and incidents of an indictment as employed in the ancient proceedings.

This being unquestionably a correct construction of the term "indictment" as used in the constitution, it must follow that the term "information," as employed in the same section, should be subjected to the same common law meaning. The text-books are uniform in defining an information to be an accusation or complaint exhibited against a person for some criminal offense, "either immediately against the king or against a private person, which, from its enormity or dangerous tendency, the public good requires should be restrained and punished, and differs principally from an indictment in this, that an indictment is an accusation found by the oath of twelve men, whereas an information is only the allegation of the officer who exhibits it. 5 Bacon's Abr., pp. 167, 170, 172; Hawk. P. C., 26, § 4. The information at common law was uniformly exhibited by the attorney general in certain cases, but at his discretion, except, perhaps, where directed by the house of lords or house of commons, or some of the high officials, as the lords of the treasury, etc. The king's coroner and attorney in the court of king's bench, called the crown officer, might file informations. This he might do, and usually did, at the prompting of some private individual. But no private citizen could beget a criminal prosecution on his mere affidavit or information. 1 Bishop Crim. Proc., (3 Ed.) 141, 143; Jacob's Law Dic., title "Information." Bishop, (§ 144) says: "In our states the criminal information should be deemed to be such and such only as in England is presented by the attorney or the solicitor general. This part of the English common law has plainly become common law with us. And as with us the powers which in England are exercised by the attorney general and solicitor general, are largely distributed among our district attorneys, whose office does not exist in England, the latter

officers would seem to be entitled, under our common law, to prosecute by information as a right adhering to their office, and without leave of court." Wharton lays down the same doctrine. Crim. Pr. and Pr., (8 Ed.) § 87.

So jealous were the English people, from whom comes our common law heritage, of their personal liberty and the protection of due process of law, that they contended for a time earnestly against the summary proceeding by information as violative of the *Magna Charta*, and threw around its exercise many safeguards against abuses. If reasons were necessary to justify the conclusion reached in this opinion, they are numerous why no such right should be entrusted to a private citizen to inaugurate a proceeding like this upon his own affidavit. The injustice and abuse of such process, left at the caprice, spite or malice of one not under the sanction of official duty, is apparent, and, therefore, the framers of the constitution employed the term " information," without more, well understanding its common law import and meaning. And we are not authorized, nor is the legislature, to extend its meaning and use.

The act of 1877, (Laws 1877, p. 355, § 6,) properly required the prosecuting attorney to file such informations. And in *State v. Huddleston,* 75 Mo. 667, and *State v. Sebecca,* 76 Mo. 55, this court held that a proceeding instituted under the statute on mere affidavit was unauthorized.

It is due to the attorney general to say that he concedes the correctness of the views herein expressed touching the term " information."

It is not deemed necessary to decide, in this case, whether sections 2025 and 2026, Revised Statutes 1879, were designed by the legislature to apply to a case like the one under consideration. If they were we have no hesitation in holding that they would, as applied to such proceeding, be unconstitutional.

The proceeding in question should have been dismissed;

but as the court below arrested the judgment, its judgment will be affirmed and the prosecution dismissed. All con-