The State v. Ransberger.

THE STATE OF MISSOURI, Respondent, v. HENRY RANSBERGER, Appellant.

Kansas City Court of Appeals, December 1, 1890.

1. Information: CONSTITUTIONAL LAW. The information prescribed by the constitution for the prosecution of certain criminal offenses is the information of the common law, and no other can be authorized by the legislature.

2. ———: WHAT IS, AT COMMON LAW. At common law an information is uniformly held to be an accusation exhibited against a person for some criminal offense by the attorney general or solicitor general and at his discretion in right of his office and without leave of court, and differs principally from an indictment in this, that an indictment is an accusation found by the oath of twelve men, whereas an information is only the allegation of the officer who exhibits it *without his oath*.

3. ———: ATTORNEY GENERAL: PROSECUTING ATTORNEY. Since in the United States the criminal information is deemed to be such, and such only, as in England is presented by the attorney general, prosecuting attorneys are entitled under our common law to prosecute by information, as a right adhering to their office and without leave of court.

4. ———: PROSECUTION BEFORE JUSTICE OF THE PEACE: OATH OF PROSECUTING ATTORNEY. An information filed before a justice of the peace by a prosecuting attorney need not, under the constitution, be on his personal knowledge nor verified by his oath, and the statute cannot hamper that officer in his duties by the requirement of such verification.

*Appeal from the Saline Criminal Court.*—HON. JOHN E. RYLAND, Judge.

*Certified to the Supreme Court.*

*T. P. Strother*, for appellant.

(1) The court erred in overruling motion in arrest. Under the law as it then was, the information was wholly insufficient, not being based on the affidavit of anyone having personal knowledge of the crime, nor upon the personal knowledge of the prosecuting attorney. *State v. Humble*, 34 Mo. App. 343; *State v. Wilkson*, 36 Mo. App. 373. (2) The information in this case, and that in *State v. Humble, supra*, are alike, and subject to same vice. This information was filed July 10, 1889, and the case finally tried in September, 1889, and the amended statute did not take effect until November, 1889. A subsequent change of the law could not cure this defect, for it would be *ex post facto*.

*Alfred R. Rector*, Prosecuting Attorney, for the State.

(1) The information is sufficient; the objection that it is made upon the information and belief of the prosecuting attorney is not well taken, and the information conforms to the requirements of the constitution of this state, and every statute upon the subject as well. R. S. 1879, sec. 1762; Laws of 1885, pp. 145, 146. And is properly verified. *State v. Shaw*, 26 Mo. App. 383; *State v. Harris*, 30 Mo. App. 82; *State v. Ristig*, 30 Mo. App. 360; *State v. Fletchall*, 31 Mo. App. 301; *State v. Kelm*, 79 Mo. 515; *State v. Briscoe*, 80 Mo. 643; *State v. Hayward*, 83 Mo. 299. *Contra:* *State v. Humble*, 34 Mo. App. 343; *State v. Wilkson*, 36 Mo. App. 373. (2) The information required by section 12, of article 2, constitution of 1875, is a common-law information, *i. e.*, a charge preferred by the crown officer; there was no requirement that the same should be verified by affidavit, or that the officer filing the information should do so on his personal knowledge. *State v. Kelm*, 79 Mo. 515; *State v. Fletchall*, 31 Mo.

App. 301; *State v. Thomas*, 10 Mo. App. 24. (3) This case ought to be transferred to the supreme court, as presenting a constitutional question. *Ex parte Boenninghausen*, 21 Mo. App. 267; *Ex parte Olden*, 37 Mo. App. 116.

ELLISON, J.—This prosecution was begun before a justice of the peace of Saline county by information from the prosecuting attorney charging defendant with lasciviously and lewdly cohabiting with a female therein named. The only objection urged to the information is in relation to the affidavit made by the prosecuting attorney and attached thereto. The affidavit is, "that the facts stated in the foregoing information are true according to his best information and belief," etc. The specific objection is that the affidavit should have been based upon the knowledge of the prosecuting attorney, and not merely his information and belief. Defendant insists that the judgment of conviction should be reversed on account of such objection. The attorney for the state concedes the defendant's point if the cases of *State v. Humble*, 34 Mo. App. 343, and *State v. Wilkson*, 36 Mo. App. 373, are to be regarded as sound law, but he insists that they should not be so regarded.

The matter of criminal information is found in two parts of our statute. The procedure in the circuit court is found in sections 1760 to 1769, Revised Statutes, 1879, and in justice of the peace courts, in sections 2024 to 2077, as amended by Laws, 1885, page 145. Looking to the letter of section 1762, relating to circuit courts, an affidavit was necessary though the information was instituted by the attorney himself; and the affidavit could be made on *information and belief*. But, in proceedings before a justice of the peace, it is provided that "whenever the prosecuting attorney *has knowledge* of the commission of an offense" he shall file an information which need not be verified by his affidavit. Nothing need be said of the power of the legislature to

enact in section 1761 a requirement that the prosecuting attorney shall make an affidavit to an information when the proceeding is instituted by him as the case before us is under the statute relating to justices of the peace. The modes of procedure are different and we will only look to the one under which this case was begun.

In *State v. Humble*, 34 Mo. App. 343, the words, "whenever the prosecuting attorney has knowledge of the commission of an offense," were held to mean actual, personal knowledge as distinguished from belief, or that knowledge which comes from information. And in *State v. Wilkson*, 36 Mo. App. 373, the same view is taken by the St. Louis Court of Appeals, with the additional holding that this knowledge must be shown on the face of the information. Are these decisions sound? I am led to the conclusion that the construction placed upon the statute by them is either erroneous, or, if correct, the statute would be in conflict with the constitution of the state. The constitution provides that offenses of the description at bar "shall be prosecuted criminally by indictment or information as concurrent remedies." Art. 2, sec. 12. The prosecution in this case is not by indictment; it is aimed to be, and must be under the command of the constitution, a prosecution by information. The important question then is, what is an information? The answer is not what the legislature may prescribe or designate as an information, but the common-law information which at the adoption of the constitution was well known. The information of the common law is the information prescribed by the constitution, and no other mode can be authorized by the legislature. This has been so frequently adjudicated by the supreme court of the state as not to be debatable or questionable. *State v. Kelm*, 79 Mo. 515; *State v. Briscoe*, 80 Mo. 643; *State v. Russell*, 88 Mo. 649. The practical point then is, to ascertain what a common-law information is. Bacon defines it to be, "An accusation

or complaint exhibited against a person for some criminal offense either immediately against the king or a private person, which from its enormity or dangerous tendency, the public good requires should be restrained and punished, and differs principally from an indictment in this, that an indictment is an accusation found by the *oath* of twelve men, whereas an information is only the *allegation of the officer who exhibits it.*" The italics are my own. It is uniformly held to be an accusation exhibited against a person for some criminal offense by the attorney general or the solicitor general, and at his discretion. It was exhibited by such officer in right of his office, and without leave of court. *State v. Kelm,* 79 Mo. 515 ; *State v. Briscoe,* 80 Mo. 643. It is filed at the mere discretion of the proper officer *ex officio.* Wharton's Crim. Law, 213. He is the sole judge of what misdemeanors he will prosecute. He may file an information against anyone whom he thinks proper to select, *without oath,* without motion or opportunity for the accused to object to its being filed. He was not included in the regulations of the statute which direct the proceedings when the information may be instituted otherwise than by himself ; his power remains as at common law, without diminution and without control. 1 Chitty, Criminal Law, 845, 846. Blackstone, book 4, pages 308, 309, 310, says that informations were exhibited *ex officio* by the attorney general. The king was bound to prosecute, or lend his name to the prosecutor, whenever the grand jury informed him on their *oaths* that there was sufficient ground ; but when his immediate officers were *otherwise* sufficiently *assured* of the commission of an offense they were at liberty, without waiting for any further intelligence, to convey the information to the court. This author further says, pages 311, 312, that the power of filing informations without any control also resided in the breast of the master of the crown office ; that, while such power of this officer

was afterwards restricted by statute, the attorney general was in no way restrained thereby.

It is firmly established that in the United States the criminal information should be deemed to be such, and such only, as in England is presented by the attorney general or solicitor general. And, as with us, the powers which in England are exercised by the attorney general and solicitor general are largely 'exercised by the district or prosecuting attorneys, whose office does not exist in England, the latter officers are entitled, under our common law, to prosecute, by information, as a right adhering to their office and without leave of court. 1 Bishop's Crim. Proc., sec. 144; *State v. Kelm*, 79 Mo. 515; *State v. Dover*, 9 N. H. 468. The latter case embodies the foregoing views quite as clearly and explicitly as does the decision of our own supreme court.

From these considerations it should be clear to the legal mind that a common-law information is one that is intrusted solely to the discretion of our state's attorney, to be given or withheld at his will, unhampered by statutory restraint; that he gave such information upon his own volition, without oath or responsibility, and only subject, perhaps, to the separate liability imposed by law for the wilful abuse of process. *State v. Dover*, *supra*. But in the proceeding itself there was no mode of inquiring as to his motive, nor how, nor from whence, came his knowledge of the offense charged, or whether he had knowledge at all. He was a sworn officer with this power *virtute officii*, for the public good. Nor is the power so unreasonable or destructive to liberty as has been suggested. His information only put the accused on trial, and its abuse was guarded by his official responsibility and his oath of office as securely as if supplemented by his additional oath to the information. And, if he arbitrarily and unjustly refused an information, the public or the injured citizen could still resort to the grand jury for an indictment. Nowhere

can it be found that the officer's oath was necessary to the information, nor that he should state why he gave it or his means of knowledge. No such thing is found in the common-law forms. 1 Bishop's Crim. Proc., sec. 146 ; 1 Chitty's Crim. Law, 846. Indeed, it is not pretended such was the case.

Much of this question was considered by this court in *State v. Fletchall*, 31 Mo. App. 296, in an opinion by PHILIPS, P. J., who said, that "there is nothing in this statute which requires the prosecuting attorney to either set out in the information the sources of his knowledge or to support it by his affidavit. There is nothing in the constitution making any such requirement as it merely authorizes prosecutions to be made by indictment or information. And, as already stated, the term 'information' as thus employed in the constitution must be taken and understood in its common-law meaning and import. At common law the crown officer was not required to make oath to the information lodged by him, nor to set out his source of information, nor to state that he had personal knowledge of the fact." That is unquestionably a correct statement of the law on this question, and, in my opinion, should have been followed in *State v. Humble, supra*.

Judge BIGGS, speaking for the St. Louis Court of Appeals in *State v. Wilkson, supra*, differs from the opinion expressed in *State v. Fletchall* only wherein it is held in the latter case that the information need not state that the prosecuting attorney has personal knowledge. He holds not only that the prosecuting attorney must have personal knowledge of the commission of the offense charged, but that he must state that he had such knowledge. Now, it is conceded, or, if not conceded, it is quite evident, that the common-law information need not be based upon the oath, or personal or actual knowledge of the state's attorney ; nor, of course, was it necessary to so state in the information that he had such knowledge. The constitution has said that no such

requirement shall be made in this state. *Ex parte* *Slater*, 72 Mo. 102 ; *State v. Briscoe, supra ; State v. Kelm, supra.* And the legislature has no power to require that such matter shall exist. Indeed, there is no such thing in this state as a statutory information ; it is the common-law information which the sovereign power has seen fit to adopt. The makers of this constitution, by adopting this information, have said that we desire to establish the right in this state for the prosecuting attorney to file an information on his own responsibility, unquestioned, at his own will and motion, without it being necessary to make oath to it, or to have personal or actual knowledge of the offense. *Ex parte* *Slater, supra.* Suppose the common-law information had required the oath of the attorney, or had required his personal knowledge, would it be supposed for a moment that the legislature could have dispensed with such requisites ? If not, how can it require such matter when the policy of the constitution in adopting the common-law mode is that it shall not be required ? As the legislature is powerless to change this, it should not be held to have done so.

Such law is not contrary to sound policy. There is a large class of public crimes or misdemeanors which, not affecting directly any individual, will not be complained of by him, and which, not being personally known to the prosecuting attorney, would go unpunished, or unsuppressed, but for the power of the attorney, *virtute officii*, to file his information. A house of prostitution, a gambling house or an unlicensed saloon may exist in some town of the county, in all probability personally unknown to the prosecuting attorney, but yet as notorious as that such town had a postoffice. No individual will make complaint. Shall it be said that the prosecuting attorney cannot file an information, on account of lack of personal knowledge? As before stated, the makers of the constitution have adopted an information which permits this to be done, and denies

the right of the accused or the legislature to say otherwise.

It will take but a suggestion to show the vast difference between this question in this state and in others which have not a like *constitutional* provision. If the constitution had been silent, the legislature would have been at full liberty to make such changes in the common-law information as it deemed wise; for, while powerless to change the constitution, it can alter the common law.

Since section 4059, Revised Statutes, 1889, yet requires an information to be sworn to by the prosecuting attorney, and since section 4329 requires that officer to give the information on his knowledge, information and belief, which fact, under *State v. Wilkson*, should appear on the face of the information, and as the case in some respects presents a constitutional question, it becomes, under our conclusion herein, of great public importance that the opinion of the supreme court should be taken, to the end that a final and authoritative interpretation may be had. The cause will, therefore, be transferred to the supreme court, as provided by the constitution.