## STATE V. BECKER.

1. Section 12, c. 101, Laws 1890, which provides that under certain conditions, therein named, the attorney general shall appoint some reputable attorney for the purpose of enforcing said law, and that such appointee shall have authority to sign, verify, and file all such complaints, informations, indictments, petitions, and papers as the state's attorney is authorized to sign, etc., and to do any act that such state's attorney might lawfully do, is not invalid in that it attempts to confer upon the attorney general the power to create a new office.

2. The fact that the prosecutor in this case had been so appointed being properly alleged in the information, defendant in error could not, in an issue made by demurrer to the information, raise the question that his authority should be made to appear by evidence other than the averment of the information. The fact of the appointment was admitted by demurring.

3. An information in a criminal proceeding in the county court under said chapter 101 may be made by the attorney general or a state's attorney on his information and belief.

4. It is only when the collision between the legislative and the constitutional law is certain and inevitable that the courts feel justified in declaring a law void on that account.

5. The object of section 21, art. 3, of the constitution, providing that "no law shall embrace more than one subject, which shall be expressed in the title," is to prevent bringing together into one act measures diverse and foreign to each other, with a view of combining the friends of each, and thus to accomplish the passage in one law of the several measures, which could not have passed on their individual merits, and also to prevent the insertion into bills of matter or measures of which the title gave no notice, and thus to deceive and mislead individual legislators and the public generally.

6. The disposition of the courts is general to construe this constitutional provision liberally, rather than to embarrass or defeat legislation by a construction whose strictness is unnecessary to accomplish the beneficial purposes for which it was adopted.

7. The reason for the rule that duplicity in the title and in the law is fatal to the law is the inability of the court to determine which of the different subjects named the legislature intended as the subject of the law, and when the reason fails the rule fails, and so the rule applies only where such inability actually exists. .

8. As to said chapter 101 there is no such inability, for its title expressly declares that it is intended to enforce "the provisions of article 24 of the constitution," and the provisions of that article cover only the manufacture, sale, and keeping for sale of intoxicating liquors, and not the use of such liquors; so that if it were, for any reason, incompetent for

the legislature, in that law, to legislate against the use of such liquors, the subject of the use might be dropped from both the title and the law, if, such subject being rejected, that which remains is a complete and sensible law, and capable of being executed in accordance with the apparent legislative intent.

9. It is not necessary, in order to make such rejection allowable, that the obnoxious subject or matters be contained in independent provisions. The test is whether they are essentially and inseparably connected in substance.

10. Whether any portion or provision of a law is invalid because it violates the constitutional rights of the citizen, or because it violates a constitutional rule of legislation, its relation to the balance of the law is the same, and may be rejected from the law under the same conditions.

11. The subject of the use of intoxicating liquors may be dropped from the title and from the provisions of the law without affecting the balance of the law.

12. The punishment imposed by section 13, c. 101, Laws 1890, for the first offense of keeping and maintaining a common nuisance is not a "cruel punishment," within the meaning of section 23, art. 6, of the constitution, and such provision is not unconstitutional on that account.

13. Article 24 of the constitution declares a policy single in its ultimate purpose and object, but a law for its enforcement must necessarily, and therefore may legally, include the employment of many measures and the attainment of many ends, not as independent objects or subjects of legislation, but as auxiliary to the final purpose sought.

14. It is a well established and wholesome rule of law that no one can take advantage of the unconstitutionality of an independent provision of a law, who has no interest in and is not affected by such provision.

(Syllabus by the Court. Opinion filed April 5, 1892.)

Error to Yankton county court. Hon. EDWIN WHITE, Judge

Information charging defendant with keeping and maintaining a common nuisance. Defendant demurred to the information. Demurrer sustained. The state brings error to this court. Reversed.

The facts are fully stated in the opinion.

*Robert Dollard, Attorney General, L. B. French, State's Attorney, V. V. Barnes, B. W. Burleigh* and *S. A. Boyles,* for plaintiff in error.

There must be a plain and manifest conflict between a statute and the constitution to make the former void. Cooper v. Tellfair, 4 Dal. 18; State v. Morgan, 48 N. W. 314.

The rule that there shall be but one subject, and that expressed in the title, should be only reasonably observed. Cooley, Const.

Lim. 174; Woodson v. Murdock, 22 Wall. 351; State v. Bowers, 14 Ind. 195; State v. Madison, 45 N. W. 856; Gibson v. Pullman, 42 Fed. 572; Macon v. Stamps, 11 S. E. 442; Missouri v. Harrison, 24 Pac. 465; Catholic v. Manning, 19 Atl. 599; State v. Barrett, 27 Kan. 223; Louisiana v. Pilbury, 105 U. S. 278; Suth. Stat. Const. § 82; State v. Miller, 45 Mo. 497; State v. Judge, 2 Iowa, 280; German v. Beebe, 2 L. R. A. 418; Hare v. Kennedy, 83 Ala. 608; Burnside v. Lincoln, 86 Ky. 423; Howland v. Brown, 18 Bush. 685; Stickead v. Com., 5 S. W. 580; Cooley, Const. Lim. 148; Santo v. State, 2 Iowa, 165.    The restraint and regulation of the sale of intoxicating liquors is but one subject.    Com. v. Sellers, 18 Atl. 541; Com. v. Smitzer, 18 Atl. 569; Hronek v. People, 24 F. E. 861; Maguer v. People, 97 Ill. 163; State v. Donaldson, 42 N. W. 781; *Ex parte* Livingston, 21 Pac. 322; Johnson v. People, 83 Ill. 436.    The law authorizing the attorney general to appoint a reputable attorney to act in place of the state's attorney is constitutional.    *In re* Gilson, 9 Pac. 763.    A law providing for the destruction of private property used in maintaining a nuisance is not in conflict with the fourteenth amendment to the federal constitution.    Mugler v. Kansas, 123 U. S. 623; Foster v. Kansas, 112 U. S. 201; Bowman v. Railroad, 125 U. S. 465; 116 U. S. 446; 128 U. S. 1; 97 U. S. 32; Craig v. Werthmueller, 43 N. W. 606.    The provision of the United States constitution relating to cruel and unusual punishments is a restriction on the United States government and not upon any state.    Barker v. People, 3 Cowen, 686; Wynehamer v. People, 13 N. W. 418; Lulan v. Palmer, 37 N. W. 701; Werner v. Edmiston, 24 Kan. 147; Cooley, Stat. Lim. 482.

*Hugh J. Campbell* and *Phil. K. Faulk*, for defendant in error.

Leave of the court, and the information accompanied by affidavits sworn to, are indispensable to the validity of the information.    U. S. v. Bough, 1 Fed. 784; U. S. v. Tureand, 20 Fed. 623; U. S. v. Riley, *Id.* 46.

The act in question is unconstitutional, because the title expresses more than one subject.    Cooley, Const. Lim. § 148; Suth. St. Const, § 103; State v. Lancaster, 6 Neb. 484; Ragid v. State, 6 S. W. 401; Ellis v. Hutchinson, 38 N. W. 15; Board v. McGruder, 6 S. E. 23; County v. Wayne, 55 Am. Dec. 695; People v. Deneney,

20 Mich. 349; Dorcey's Appeal, 72 Pa. St. 192; *In re* Paul, 94 N. Y. 497; People v. Allen, 12 N. Y. 378; *Id.* v. Hills, 25 N. Y. 453; *Id.* v. Marx, 99 N. Y. 377; State v. Bankers, 23 Kan. 499; Railroad v. Long, 27 Kan. 684; Igoe v. State, 14 Ind. 238; State v. Ristine, 20 Ind. 238; Grubbs v. State, 24 Ind. 296; Gillespie v. State, 9 Ind. 383; Foley v. State, *Id.* 365; Astor v. Railroad, 20 N. E. 595; Holnburg v. Hauck, 38 N. W. 275; Hatfield v. Commissioners, 14 Atl. 152; Tanzatlin v. Omaha, 41 N. W. 798; White v. Lincoln, 5 Neb. 515; State v. Gilman, 10 S. E. 283; *Id.* v. Persinger, 76 Mo. 346; *Id.* v. Baum, 33 La. Ann. 881; *Id.* v. Batt, 31 *Id.* 633; People v. Draper, 15 N. Y. 543; 10 S. E. 287; Walker v. State, 49 Ala. 328; Dunham v. Trustees, 5 Cowen, 464; Lake View v. Rose Hill, 70 Ill. 195; Parrott's Chinese Case, 6 Sawyer, 371; *Re* Tie Lo, 26 Fed. 611; *Re* Sam Kee, 31 Fed. 680; Milliken v. City, 54 Tex. 388; 38 Am. 628; Austin v. Murray, 16 Pick. 121. It is unconstitutional because the title is untruthful, misleading and deceptive for the reason that it embraces so large a number of subjects not expressed in the title. People v. Com., 53 Barb. 73; State v. Young, 47 Ind. 150; *Id.* v. Barrett, 27 Kan. 221; *Id.* v. Silver, 9 Nev. 227; Bronson v. Oberlin. 41 Ohio St. 482; People v. Gadway, 28 N. W. 101; 61 Mich. 236; McWherter v. Price, 11 Ind. 199; Laner v. State, 22 Ind. 461; Shepard v. Helmers, 23 Kan. 504; People v. Parks, 58 Cal. 624; Smade v. White, 4 Neb. 353; Brown v. State, 4 S. E. 861. It is unconstitutional because it contains numerous unconstitutional sections. State v. Beswick, 30 Am. Dec. 102; 43 Am. Dec. 26; 13 R. I. 211; People v. Lyon, 27 Hun, 180; Stewart v. Palmer, 74 N. Y. 190; People v. State, 38 N. Y. 470; Rockwell v. Nearling, 35 N. Y. 307; Yick Wo v. Hopkins, 118 U. S. 356; *In re* Ad Jow, 29 Fed. 181; Mayer v. Thorne, 7 Paige, Ch. 263; *Ex parte* Kieber, 40 Fed. 399; *Id.* Royall, 117 U. S. 241; *Id.* Fonda; *Id.* 516; State v. Barber, 136 U. S. 313; Walling v. Michigan, 116 U. S. 446. Civil government is not entitled to regulate the use of property by sumptuary laws. 2 Kent's Comm., 396; Tiedman, Pol. P., 514; Cooley, Const. Lim. 385.

KELLAM, P. J. This case comes to this court on a writ of error to the county court of Yankton county. In the court below the defendant in error was charged by information with the offense

of keeping and maintaining a common nuisance in the city and county of Yankton; the information setting out the specific facts relied upon to constitute the offense under section 13, c. 101, Laws 1890. To this information defendant in error demurred on the following grounds: (1) "That said complaint or information is not brought or presented in behalf of or by the authority of the state of South Dakota, or in the name of said state, but that the person who signs said information or complaint, and who prosecutes this action, never had, nor now has, any authority of law to inquire into the offense charged therein, or to make or sign this information, or to bring or prosecute this action; and that the court for this cause has no jurisdiction of the same." (2) "That said information or complaint does not substantially conform to the requirements of the Code of Criminal Procedure and the laws of this state." (3) "That more than one offense is charged in the said information or complaint." (4) "That the facts stated in said information or complaint do not constitute a public offense against any law." The court sustained the demurrer, and discharged defendant in error. The state brings the record to this court for review.

Under the first proposition named as a ground of demurrer it is contended that this proceeding "is not prosecuted by any person known to the law, or having the authority to prosecute it in the name of the state." The information is presented by V. V. Barnes, an attorney of this court. One of its verified statements is that he was duly appointed by the attorney general to do any act that the state's attorney might do under said chapter 101, Laws 1890. Section 12 of that law authorizes the attorney general, in certain contingencies, to appoint such reputable attorney as he shall see fit, who "shall be authorized to sign, verify, and file all such * * * informations * * * and papers as the state's attorney is authorized to sign, verify, and file, and to perform any act that the state's attorney might lawfully do or perform." The contention of defendant in error is that the legislature could not lawfully empower the attorney general to make this appointment; that it was the creation of a new office; and, while the legislature might do this, it

S. D.—3.

could not authorize the attorney general to do so. This position cannot be maintained. The office of the attorney general is a constitutional office, but his duties "shall be as prescribed by law," (section 13, art. 4, Const.;) and so with the office of state's attorney. "The legislature shall have power to provide for state's attorneys, and to prescribe their duties." Section 24, art. 5, Const. It is thus left with the legislature to define the powers and duties of each of these officers. The attorney general is in the same department of service as the state's attorney, but having a larger jurisdiction, and is in a sense a superior and supervising officer. We have no doubt but that it would be competent for the legislature to authorize the attorney general to appoint an assistant for himself, or an assistant or deputy state's attorney in any county, naming the conditions under which such appointment might be made. This would not be delegating to the attorney general the legislative power to create a new office, any more than a law authorizing a sheriff or register of deeds to appoint a deputy whenever a proper discharge of his official duties required it. It is no objection that a statutory law authorizes the appointment of a deputy to a constitutional officer, and such a law may empower such deputy to discharge official duties in his own name. Touchard v. Crow, 29 Cal. 150; Calendar v. Olcott, 1 Mich. 344; Ross v. Newman, 26 Tex. 134. Very nearly this same question was raised and decided in *Re* Gilson, 34 Kan. 641, 9 Pac. Rep. 763, where a provision of their prohibitory law (of which the one under consideration is nearly a copy) was sustained; and it was further held that it could not be collaterally questioned that the appointment was duly made, and for sufficient reasons. Again, it is urged by defendant in error that, even if it were competent for the legislature to authorize, and for the attorney general to appoint, still it was necessary that the fact of such appointment should be made to appear by official evidence; and that the averment of the information was not sufficient to show the appointee's authority to prosecute. Defendant in error cannot raise that question of fact upon this law issue. His demurrer to the information admits all the facts alleged, and the appointment in question is one of them. The effect of a demurrer is the same in criminal actions as in civil. Whart. Crim. Pl. &

Pr. § 403. It is further objected that the information is defective and insufficient, because made simply upon the information and belief of the prosecutor. Whether a complaint in the nature of a criminal information, verified by a private person on his information and belief, is sufficient, is not the question we have now to answer. We have already expressed an opinion that leads directly to the conclusion that this information must be treated as though made officially by the attorney general or the state's attorney, and we feel sure that the very exemplary and eminent counsel who presented this case for defendant in error in this court would not have us hold that, while the attorney general and the state's attorneys are charged with the enforcement of this law, in order to qualify himself for making an information under it, each must seek and possess himself of personal knowledge of its violation. When the information in a criminal proceeding is made by the attorney general or state's attorney as such, it may be upon his information and belief, (Washburn v. People, 10 Mich. 385; State v. Montgomery, 8 Kan. 351; State v. Druitt, (Kan.) 22 Pac. Rep. 697;) and, in the absence of statute, without any verification at all, as at common law, (1 Chit. Crim. Law, 845; State v. Dover, 9 N. H. 468; State v. Ransberger, 42 Mo. App. 466; Territory v. Cutinola, (N. M.) 14 Pac. Rep. 809).

The second and third grounds of demurrer are not argued. This brings us to the most important question in the case, to-wit, is the law itself a valid and constitutional expression of legislative authority? Before entering upon the examination of the particular question involved, it may be well, though it can hardly be necessary, to refer to the general attitude of the courts in respect to the impeachment of legislative acts on account of repugnance to the constitutional law. The subject itself is always approached reluctantly, and with great caution. Its consideration should receive the most careful attention and the most patient deliberation; and only when the collision between the legislative and the fundamental law is certain and inevitable do the courts feel justified in declaring a law void. State v. Morgan, (S. D.) 48 N. W. Rep. 314. With the purpose or policy of a law the courts have no concern. That is a legislative, not a judicial, question. It is, in

general, for the legislature to determine what ends are desirable to be accomplished, and to adopt the means which seem to it the. best adapted to serve such ends; and the courts may only interfere. when the ends so sought, or the means or measures so adopted, are plainly forbidden by the constitution. Cooley, Const. Lim. (5th Ed.) 203, and cases cited; Suth. St. Const. §§ 235, 237, and cases cited. In the matter, however, of the manufacture, sale, and keeping for sale of intoxicating liquors as a beverage the legislature itself has no discretion, except as to the particular measures to be : employed for the enforcement of the prohibition declared in the constitution. The particular provision of the constitution which it is claimed this law violates is section 21, art. 3, which reads: "No law shall embrace more than one subject, which shall be expressed in the title." This is a very common provision in state constitutions, but to make a correct and intelligent application of any rule of law to cases not plainly and palpably within its terms, the purpose of the rule must be understood and remembered. The object of this provision was at least double. It was to prevent bringing together into one bill measures diverse and foreign to each other, and by thus combining the friends of each, accomplish the passage of the several measures in one law, when perhaps no one of them could have passed on its own merits. It was also intended to prevent the insertion into bills of matter or measures of which the title gave no notice or intimation, and thus to deceive or mislead the individual legislators and the public generally. Neither the members of the legislature, nor the people for whom the laws are made, can know the entire contents of every bill proposed as a law, but must depend to a large extent upon their titles to indicate their subject and scope. To limit every law to one general subject would ordinarily put each law upon its own merits, to be supported only by members unselfishly friendly to its policy; and to fairly indicate its subject by the title would prevent imposition and mistake. This is the theory and purpose of the rule, and the effort of the courts is and should be to so apply it as to guard against the danger intended to be avoided, and at the same time not to embarrass or obstruct legislation by overnice distinctions. State v. Morgan,

*supra*; People v. Mahaney, 13 Mich. 494; Durkee v. Janesville, 26 Wis. 697; State v. County Judge, 2 Iowa, 280; State v. Miller, 45 Mo. 495; Suth. St. Const. § 92. Judge Cooley closes a discussion of this subject with this remark: "There has been a general disposition to construe this constitutional provision liberally, rather than to embarrass legislation by a construction whose strictness is unnecessary to the accomplishment of the beneficial purposes for which it was adopted." Cooley, Const. Lim. 176. The title to the act under consideration is, "An act to prescribe regulations for the enforcement of the provisions of article 24 of the constitution of South Dakota, entitled 'Prohibition,' and to prescribe penalties for the unlawful manufacture, sale, keeping for sale, and use of intoxicating liquors, and to regulate the sale, barter, and giving away of such liquors for medical, scientific, sacramental, and mechanical purposes."

Recurring to the constitutional provision which it is claimed this act violates, we observe that it is the law, not the title, that can embrace but one subject. We have already referred to the reasons for this constitutional safeguard against dangerous legislation, and it is not difficult to see that the mischief which the provision was intended to prevent was that of putting into the law what was not indicated in the title, and not that of making the title broader than the law. Suppose a law had for its title "An act to regulate the transfer of bills of exchange, promissory notes, and other contracts in writing," but the body of the law only assumed to regulate the transfer of bills and notes, would the broader title have the effect to invalidate the more restricted law? We think not. But, on the other hand, if the title had been, "An act to regulate the transfer of bills of exchange and promissory notes," and the law had covered the subject of all other contracts in writing, it would clearly have been in violation of the constitution, because it would undertake to legislate upon a subject not indicated in the title, and as to contracts in writing other than bills of exchange and promissory notes it would have been void. We notice this more particularly because defendant in error very earnestly urges it upon our attention that the effect of uniting two distinct subjects in the title of the law is more serious than making such

combination in the body of the law, and that its effect is inevitably to destroy the entire law, when such result would not necessarily follow the introduction of a second subject into the law itself. This law was designed to supplement article 24 of the constitution, which is: "No person or corporation shall manufacture or aid in the manufacture for sale, any intoxicating liquor. No person shall sell or keep for sale as a beverage any intoxicating liquor. The legislature shall by law prescribe regulations for the enforcement of the provisions of this section, and provide suitable and adequate penalties for the violation thereof." Defendant in error argues that this article must be taken to express one complete subject, and, inasmuch as that article does not include the use of intoxicating liquors, the use must be a subject other than and different from that expressed in the article; and consequently a subject which, under the constitutional provision before quoted, cannot be included in the title without invalidating the act itself.

But we do not find the authorities supporting the broad proposition of defendant in error that, "if the title itself express more than one subject, then the law must be held unconstitutional *in toto.*" In fact, among all the authorities cited by defendant in error, and others not cited, which we have examined, we do not recall one (we do not say there are none) in which is raised or discussed the effect of duplicity in the title, except in connection with duplicity in the law itself. The danger lies in putting into the law what is not in the title, more than in putting into the title what is not in the law. It is earnestly contended that duplicity in the title is equivalent to duplicity in both title and law, and we are urged to apply the same rule as in such case, and for the same reason,— "that it is impossible for the court to say which of the two different subjects the legislature intended to be considered as the subject expressed in the title and embraced in the act." This consideration of the inability of the court to know or say which of two or more independent and foreign subjects named in both the title and body of a law was the controlling motive in the legislative mind, has ordinarily led to the rule which defendant in error refers to and claims should control this case; but *cessante ratione legis cessat ipsa lex,* and it is plain that the reason for the rule does not exist in

this case. The court can have no doubt as to the object or intended scope of the law, for it formally declares that its object is "to prescribe regulations for the enforcement of the provisions of article 24 of the constitution." With this article 24 of the constitution, and the full title of this law, referring directly to it, before us, we could not with any candor say that we were in doubt as to whether the design of the law was to prohibit the personal use of intoxicating liquors or to prohibit their manufacture, sale, and keeping for sale. With no doubt as to the purpose of the law, there can be no doubt as to which subject, if any, should be rejected as the foreign or incongruous subject. Referring to this rule, which defeats the entire law because of duplicity in both the title and the body of the law, the supreme court of Nebraska said: "But this rule will apply only in those cases where it is impossible from an inspection of the act itself to determine which act, or rather which part of the act, is void and which is valid." State v. Lancaster Co., 17 Neb. 87, 22 N. W. Rep. 228. For this reason we are of the opinion that, even though we should consider the use of intoxicating liquors a subject so distinct from and foreign to the subject of their manufacture, sale, and keeping for sale that it could not legally be joined with such latter subject, still, as it is separable, and may be eliminated without affecting other provisions, we think we ought to hold that the subject of the use may be altogether rejected from the law and from its title. The effect of an unconstitutional provision in a law was very thoroughly discussed in State v. Morgan, *supra.* The rule is that if, when the unconstitutional portion is stricken out, that which remains is complete, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must be sustained. Cooley, Const. Lim. § 178, and numerous cases cited; Suth. St. Const. § 103, and numerous cases cited. And it is not necessary, in order to make such rejection allowable, that the obnoxious matters be contained in independent provisions. The distribution of the law into distinct divisions or sections is purely arbitrary. The test is whether they are essentially and inseparably connected in substance. People v. Kenney, 96 N. Y. 294; Com. v. Hitchings, 5 Gray, 482; Tiernan

v. Rinker, 102 U. S. 123; Mewherter v. Price, 11 Ind. 199. From this discussion we do not wish to be understood as entertaining or expressing the opinion that the legislature might lawfully impose a penalty upon any citizen for the use by himself of the forbidden drinks. That is not the question at this point. It is simply whether the use of a thing is essentially so foreign to and disconnected from the traffic in it as to make a law embracing both subjects liable to the charge of duplicity; but whether that portion of the law which forbids the use of intoxicating liquors should be condemned because in violation of the personal rights of the citizen as guarantied by the constitution, or because in violation of a rule to control legislation, as declared by the constitution, its relation to the balance of the law is the same.

It is further contended that the law is unconstitutional, in that it imposes "excessive and unusual" punishments. In Pervear v. Com., 5 Wall. 475, it was said by Chief Justice CHASE that the article in the federal constitution forbidding cruel and unusual punishments applies to national, and not to state, legislation. Our own state constitution (section 23, art. 6) forbids the infliction of "cruel punishments." The punishment to which defendant in error is exposed in this case is "a fine of not less than $100 nor more than $500, and by imprisonment in the county jail not less than sixty days nor more than six months." Judge Cooley says: "Probably any punishment declared by statute for an offense which was punishable in the same way at the common law could not be regarded as cruel or unusual in the constitutional sense * * * But those degrading punishments which in any state had become absolute before its existing constitution was adopted we think may well be forbidden by it as cruel and unusual." Cooley, Const. Lim. p. 402. But, whether this view of the meaning of the expression as used in the constitution is too broad or too restricted, it is certain that it devolves upon the legislature to fix the punishment for crime, and that in the exercise of their judgment great latitude must be allowed; and the courts can reasonably interfere only when the punishment is so excessive or so cruel as to meet the disapproval and condemnation of the conscience and reason of men generally. In Luton v. Circuit Judge, 69 Mich. 610, 37 N. W. Rep. 701, the

court refused to set aside a law making the penalty for the first offense of unlawfully selling liquor by a druggist a fine of not less than $100 nor more than $500, or imprisonment not less than ninety days nor more than one year, or both such fine and imprisonment; saying: "While we may think this penalty a very severe one for a first offense, yet it is within the discretion of the legislature, with which discretion the courts cannot interfere." Again, in People v. Morris, 80 Mich. 634, 45 N. W. Rep. 591, a statute fixing the minimum punishment for horse-stealing at three years' imprisonment and the maximum at fifteen years was held not to violate this provision of the constitution. It is a very noticeable fact that this question has seldom been presented to the courts, and we take this fact to signify that it has been the common understanding of all that courts would not be justified in interfering with the discretion and judgment of the legislature, except in very extreme cases, where the punishment proposed is so severe and out of proportion to the offense as to shock public sentiment and violate the judgment of reasonable people. We feel sure we should go quite beyond reason or precedent if we should hold this law invalid on this account.

Other provisions of this law are challenged by defendant in error as not germane to or allowable under its title,—such as the prohibition of the importation of liquors, punishing intoxication, punishing the owner of a building for permitting the use of liquor in it, requiring a defendant to be a witness against himself, the seizure and destruction of property without due process of law or adequate adjudication. This article, adopted by the people as a part of the constitution, declares a policy, single in its one ultimate purpose and object, but one which would necessarily involve the employment of measures and the attainment of ends, not as independent objects of legislation, but as auxiliary to the final purpose named. In construing this law, its character and object must be considered. What are fair and legitimate means towards the accomplishment of the end sought? And what minor or even collateral measures are so subsidiary to or helpful in promoting the chief object as to be appropriate and special means to the general end? It does not follow that the provisions of the law must be

limited in expression to the terms of the constitution. The general requirement of the constitution upon the legislature is to provide and pass such laws as will effectuate the prohibition named, and prevent the manufacture, sale and keeping for sale, of intoxicating liquors as a beverage. This may reasonably include more than simply prescribing penalties for the three distinct acts named in the prohibitive article. This question was very fully considered in State v. Morgan, already referred to, and in his opinion Judge BENNETT said: "When the title of a legislative act expresses a general subject or purpose, which is single, all matters which are naturally or reasonably connected with it, and all measures which will or may facilitate the accomplishment of the purpose so stated, are germane to its title." And so in State v. Adamson, 14 Ind. 296, and again in Williams v. State, 48 Ind. 306, a provision making the giving away of intoxicating liquors a criminal offense was held valid under the title of "An act to regulate and license the sale of spirituous liquors." In Cole v. Hall, 103 Ill. 30, "An act to indemnify the owners of sheep in case of damage committed by dogs" was held to properly contain a provision imposing a license fee upon all owners of dogs. In Fletcher v. State, 54 Ind. 462, "An act to regulate and license the sale of intoxicating liquors" was held to justify provisions for proceeding against a disorderly house, where liquors were sold, as a common nuisance, and for fining the keeper thereof. In O'Leary v. County of Cook, 28 Ill. 534, it was held that in an act entitled "An act to incorporate the Northwestern University," a provision prohibiting the sale of spirituous liquors within four miles of the college, was valid. In Blood v. Mercelliott, 53 Pa. St. 391, it was held that in "An act to increase the boundaries of Forest county" provisions for the location of the county seat and procuring donations for erecting county buildings were valid. In Ex-parte Yung Jon, 28 Fed. Rep. 308, "An act to regulate the sale of opium and suppress opium dens" was held sufficient to cover provisions against giving away opium except on prescription of a physician. An act to incorporate a railroad company has been held properly to embrace provisions authorizing towns and cities along its line to subscribe to its capital stock, to provide for the holding of elec-

tions to decide as to such subscriptions, and to legalize elections already held, and for the issue of bonds to represent such subscription. Mahomet v. Quackenbush, 117 U. S. 508, 6 Sup. Ct. Rep. 858. In Fireman's Benevolent Ass'n v. Lounsbury, 21 Ill. 510, it was held that in an act to incorporate the Firemen's Benevolent Association there might properly be incorporated a provision requiring every local insurance agent to pay a percentage of the premiums received by him to the treasurer of such association for the support of the association and the maintenance of its charities. Some of these independent provisions sustained by the courts on the ground that they might contribute to the accomplishment of the declared object of the law would seem to have as little necessary or apparent connection with or relation to the subject expressed in the title as at least some of the provisions in this law which defendant in error characterizes as foreign and not germane. But these and many other cases which might be cited will serve to justify the conclusion of the learned author in Sutherland on Statutory Construction, (section 101): "Sound policy and legislative convenience dictate a liberal construction of the title and subject-matter of statutes to sustain their validity." But it is not worth while further to discuss, nor even to express an opinion, as to whether any or, if so, which, of these criticised provisions are objectionable, or upon what ground. It is possible, and perhaps probable, that some of the minor and subsidiary measures of this law could not be sustained; but they are, all of them, we think, independent and severable, so that they might be stricken out in accordance with the suggestions already made, without fatal consequences to the law; and even if it were now certain that in a case presenting such question this court would hold certain of these provisions unconstitutional, defendant in error is not in position to take advantage of such fact, for the reason, in connection with those already stated, that the charge against him is not predicated upon either of the challenged provisions. He is charged with the offense of keeping and maintaining a common nuisance. As affecting this prosecution, he is interested in no other provision of the law, unless such provision is so inextricably intermingled in substance with the balance of the law that it can-

not be withdrawn without defeating the law itself; and this, we think, is not the case with any provision to which our attention has been called. It is a well-established and wholesome rule of law that no one can take advantage of the unconstitutionality of any provision who has no interest in and is not affected by it. State v. Snow, 3 R. I. 64; Stickrod v. Com., (Ky.) 5 S. W. Rep. 580; Sinclair v. Jackson, 8 Cow. 543. In our opinion, the judgment of the county court sustaining the demurrer to the information was erroneous, and such judgment is reversed. All the judges concur.