## STATE v. AYERS.

1. Laws 1895, Chap. 64, authorizing the several courts of the state "to hear, try and determine prosecutions upon information, for crimes, misdemeanors and offenses" theretofore triable on indictment only, embraces but a single subject, and is not in violation of Const., Art. 3, Sec. 21, which provides that "no law shall embrace more than one subject, which shall be expressed in the title."

2. Such act is within Const. Art. 6, Sec. 10, which provides that "the grand jury may be modified or abolished by law."

3. On trial for seduction it appeared that defendant first met the prosecuting witness late in the year 1894; that he frequently escorted her to places of public worship and social entertainments, and informed her that he was keeping company with no other young lady; that they had associated thus to the last of February, 1895, when accused temporarily left the state; that during his absence for five months the prosecuting witness had no other male attendant; and that upon his return to the state accused renewed his attentions, and soon afterwards accomplished her ruin.   *Held,* that the corroborating evidence was sufficient to sustain the verdict that the offense was accomplished under a promise of marriage.

(Opinion filed April 24, 1896.)

Error to circuit court, Beadle county. Hon. J. O. AN-
DREWS, Judge.

Defendant was convicted of the crime of seduction, and
brings error. Affirmed.

The facts are stated in the opinion.

*T. H. Null* and *F. E. Grant*, for plaintiff in error.

There is no direct corroborating testimony to the fact of a
promise of marriage, and in the absence.of such testimony the
evidence should be such as to indicate an affianced relation.
"The mere evidence of defendant's attention was not sufficient
to carry the case to the jury." Rice v. Com., 102 Pa. St. 408;
S. C. 4 Am. Crim. Rep. 262. See, also, State v. Lauderbeck
(Iowa) 65 N. W. 158. The unchaste act of January 1st, 1895,
removed the presumption of previous chastity, and it then be-
came necessary for the state to prove her chastity at the time
of the commission of the alleged offense. People v. Squires,
13 N. W. 828.

*John Wood*, for defendant in error.

An indictment may charge a statutory offense in the lan-
guage of the statute, without greater particularity, when by
that means all that is essential to constitute the offense is
stated fully and directly. State v. Abresch, 42 N. W. 543;
State v. Shemlon, 22 Minn. 311; State v. Comford, Id. 271;
State v. Curran, 51 Iowa 112; State v. Bryan, 34 Kan. 63;
Callahan v. State, 63 Ind. 198; Sanford v. People, 1 Park Cr.
Rep. 474; People v. Kent, 1 Doug. (Mich.) 42; 10 Am. & Eng.
Encyc. Law 573 and cases cited.

The testimony of prosecutrix was corroborated by other
evidence tending to connect the defendant with the commission
of the offense, viz: the promise of marriage and intercourse
under such promise, and this was all that was necessary.
Kenyon v. People, 26 N. Y. 309; Crandall v. People, 2 Lans.
309; Boyce v. People, 55 N. Y. 646; State v. Brassfield,
18 Mo. 152; Armstrong v. People, 70 N. Y. 38; State v.
Heatherlon, 14 N. W. 230; State v. Patterson, 88 Mo. 88; State

v. Bradbury, 61 N. W. 192; State v. Wyclift, 64 N. W. 284; People v. Hubbard, 52 N. W. 729; State v. Smith, 51 N. W. 24; State v. Lauderbeck, 65 N. W. 158. See, also, State v. Wells, 48 Iowa 671; State v. Andre, 5 Iowa 398; Stevenson v. Belknap, 6 Iowa 97; 3 Am. Cr. Rep. 410; People v. Gumaer, 30 N. Y. S. 17, 80 Hun. 78: Ferguson v. State, 15 So. 70; State v. Knudson, 60 Iowa 120; People v. Millspaugh, 11 Mich. 282-3; State v. Carron, 18 Iowa 372; People v. Clarke, 1 Am. Crim. Rep. 669; State v. Moore, 43 N. W. 274.

FULLER, J. Upon a valid and duly verified information traversed by a plea of not guilty, plaintiff in error was prosecuted for and found guilty of the crime of seduction under a promise of marriage, and from a judgment of conviction error is brought to this court.

It is said that Chap. 64, Laws 1895, authorizing prosecutions upon information, embraces more than one subject, and therefore contravenes Sec. 21, Art. 3, of our constitution, and that the provisions of the statute are unauthorized and void, under Sec. 10 of Art. 6, which provides "that the grand jury may be modified or abolished by law." No claim is made that the subject of the act is not clearly expressed in the title, or that the numerous sections of the statute are in any manner inconsistent therewith. To effect a specific and clearly defined change in criminal procedure is the sole object and purpose of the act; and all its auxiliary provision are merely incidental to the single subject, namely, to authorize the several courts of the state "to hear, try and determine prosecutions upon information, for crimes, misdemeanors and offenses" heretofore triable in the circuit court upon indictment only. In order to confer such power the system is so modified that the court may in its discretion proceed without the aid of a grand jury. The subject being single, the provisions to fully accomplish the object involved may be multifarious. Suth. St. Const. p. 93; State v. Morgan, 2. S. D. 32, 48 N. W. 314; State v. Becker, 3

S. D. 29, 51 N. W. 1018.    In our opinion the act is safely within
the constitutional provision by which the legislature is ex-
pressly authorized to modify or abolish the grand jury.

The remaining question and point most strenuously urged
and confidently relied upon by counsel for plaintiff in error is
the insufficiency of the corroborating testimony.    That the ac-
cused had illicit intercourse with the prosecuting witness at the
time and place charged in the information, as a result of which
she became pregnant, was clearly established at the trial by
undisputed testimony, and the evidence submitted to the jury
upon the question of previous chaste character was entirely
sufficient to establish that averment of the information.
Though the prosecutrix is the daughter of a farmer, she was
residing in the city of Huron for the purpose of attending the
public schools, and was evidently endeavoring to prepare her-
self to teach in the country.    Before forming the acquaintance
of the accused no one had attended her in the character of a
suitor.    In fact he is the only young man from whom she had
ever received any attention.    She seems to have impressed all
who had occasion to observe her daily walk with the idea that
she was a modest, conscientious and exemplary school girl, and
the story of her calamity and her commendable demeanor upon
the witness stand, as indicated by a candid, conservative and
straightforward recital of the acts and declarations of the ac-
cused, by which she was induced, under a promise of marriage,
to yield all to his vitiating embraces, must have been favorably
received and observed by the jury.    So long as motive, environ-
ment, station in life, and considerations inumerable prompt the
action of the human mind, affianced lovers will conform to no
inflexible rule or conduct or code of social ethics, from which
the world may read the terms, conditions, or existence of a matri-
monial alliance, and the circumstances of each particular case
must measurably govern.    For obvious reasons the deportment
of one who has in bad faith entered into a contract of marriage
without any intention to perform the same may be the sole occa-

sion for conduct upon the part of himself and the injured woman unlike that of ordinary lovers. It appears from the uncontroverted evidence in this case that late in the year 1894 the prosecuting witness first met and formed the acquaintance of the accused at a public meeting of the Young Men's Christian Association, from which he accompanied her to the home of the county treasurer, with whose family she at that time resided. Thereafter he frequently escorted her home from places of public worship, church sociables, etc., and informed her that he was keeping company with no other young lady. For the purpose of assisting her to secure a school, he at one time took her to a neighboring village. Frequently he arranged to take her to various places, and afterwards, by some pretense or excuse, explained his reason for disappointing her. From the time of their first meeting up to the last of February, 1895, when he temporarily left the state, they had associated together in the manner above indicated, and he had accompanied her from public meetings to her place of abode upon at least twelve occasions. During his absence of five months she had no other male attendant, although no correspondence passed between them. Immediately upon his return he sought her out, renewed his attentions, and soon afterwards accomplished her ruin. It is abundantly shown, by the testimony of numerous reputable persons, that the prosecuting witness received from the accused all the attention that is disclosed by her evidence, and we cannot say upon all the facts and circumstances that the jury was unjustified in concluding that the confessed intercourse with a woman of previous chaste character was accomplished under a promise of marriage. In our opinion there is corroborating evidence sufficiently tending to connect the accused with the commission of the offense, and that his guilt beyond a reasonable doubt stands proved. The judgment is affirmed.