[Crim. No. 1493.    In Bank.—December 13, 1909.]

THE PEOPLE, Respondent, v. JACOB OPPENHEIMER, Appellant.

CRIMINAL ORDER—REFUSAL TO SUSPEND JUDGMENT—REVIEW ON APPEAL—INSANITY.—An order made prior to judgment, denying the motion of the defendant to suspend judgment on the ground that he is insane, is not an appealable order, but the action of the trial court is reviewable on the appeal from the judgment.

ID.—ASSAULT BY CONVICT UNDERGOING LIFE SENTENCE—CONSTITUTIONAL LAW—CRUEL AND UNUSUAL PUNISHMENT—DEATH PENALTY.—Section 246 of the Penal Code, imposing the death penalty upon every person undergoing a life sentence in the state prison, who, with malice aforethought, commits an assault upon the person of another with a deadly weapon, is constitutional. It is not violative

of section 6 of article I of the state constitution prohibiting "cruel or unusual punishments," nor of the fourteenth amendment of the constitution of the United States.

ID.—INFORMATION—ADMISSION OF CONVICTION—READING INFORMATION —EVIDENCE OF CONVICTION.—An information for such offense must allege that the defendant, at the time of the assault, was undergoing a life sentence; and on the trial thereof, notwithstanding the defendant, on his arraignment, admits the conviction alleged in the information, it was proper for the clerk in reading it to the jury, to read that portion relating to the prior conviction, and evidence thereof was properly received.

ID.—PRIOR CONVICTION WHEN ELEMENT OF OFFENSE CHARGED.—The provisions of section 1025 and subdivision 1 of section 1093 of the Penal Code, providing that a charge of a previous conviction must not be read to the jury nor alluded to on the trial, when the defendant confesses the same, have no application where the fact of the prior conviction is an essential element of the offense charged.

ID.—EVIDENCE OF CONVICTION—COMMITMENT—JUDGMENT-ROLL.—On the trial of such offense, although the record of the commitment was admissible in proof of the conviction, it was not error to also admit in evidence the judgment-roll in the action resulting in the judgment of conviction, excepting the instructions to the jury.

ID.—ASSAULT WITH DEADLY WEAPON—USE OF TWO WEAPONS—IM-MATERIAL VARIANCE. — An information for such offense, which alleges that the assault was done with "a deadly weapon," need not specify the nature of the weapon; and on the trial, evidence is admissible showing that the defendant used two weapons in making the assault. Such evidence did not show the commission of two offenses; it constituted a mere variance between the charge and the proof, which could not have prejudiced the defendant, and which must be disregarded.

ID.—EVIDENCE—CONDITIONS OF IMPRISONMENT TENDING TO PRODUCE INSANITY—EVIDENCE—CROSS-EXAMINATION.—Where the warden of the prison, as a witness for the defendant, and in support of the defense that the defendant was insane at the time of the assault, testified solely to the condition of life surrounding the defendant while in prison, the object being to show such conditions as might produce insanity, it was improper, on cross-examination, to permit him to testify as to statements made by him to the defendant as to his reasons for requiring him to live under such conditions.

ID.—UNPREJUDICIAL ERROR IN ADMITTING EVIDENCE.—The admission of such testimony was without prejudice, where it was an admitted fact in the case that the defendant, for more than eight years, had been kept in solitary confinement in the incorrigible ward of the prison. And the same is true of the cross-examination of one of the prison guards, who testified to the various occasions in which the defendant had been confined in the dungeon.

ID.—CONVERSATIONS TENDING TO SHOW INSANITY—EXCLUSION OF PAR-
TICULAR CONVERSATION.—Where the defendant was given full lati-
tude in the matter of showing conversations between himself and
others for the purpose of proving insanity, and introduced much
evidence of that kind, the sustaining of an objection to a question
asked respecting a particular conversation will be deemed without
prejudice, where no specific claim was made in the trial court that
the proposed evidence was important as tending to show any in-
sanity.

ID.—EVIDENCE OF CONDUCT OF PRISON AUTHORITIES AFTER ASSAULT.—
Evidence that the defendant, after the assault, was confined in a
strait-jacket by the prison authorities, was inadmissible to show
his mental condition at the time of the assault.

ID.—INSANITY OF OTHER PERSONS CONFINED IN INCORRIGIBLE CELLS.—
On the issue of the defendant's sanity, evidence of non-expert
prison authorities, that other persons confined· in the incorrigible
cells had become insane while so confined, is irrelevant and im-
material.

ID.—INSTRUCTIONS—INSANITY AS A DEFENSE—PREPONDERANCE OF EVI-
DENCE.—An instruction given on the subject of insanity as a defense,
construed in connection with its context, is held to correctly state
the rule in force in this state, that the defendant, in order to
establish such defense, must do something more than create a mere
doubt as to his sanity, but must show such insanity by a prepon-
derance of evidence.

ID.—FORM OF VERDICTS.—No verdicts other than that of guilty of the
offense charged or not guilty are permissible in a prosecution for
the offense defined in section 246 of the Penal Code.

ID.—ASSAULT WITH TWO WEAPONS—INSTRUCTION ON SUBJECT OF IN-
TENT.—Where the evidence of the prosecution tended to show that
the assault was committed with two weapons, to wit, a window
weight and a knife, an instruction requested by the defendant was
properly refused, which in effect directed them to acquit if they
were satisfied beyond all reasonable doubt that the blow with the
weight was intentional and deliberately inflicted, but were in doubt
whether the cutting with the knife was accidental and not
intended.

ID.—INSTRUCTION ON SUBJECT OF ACCIDENT COVERED BY OTHER INSTRUC-
TIONS.—The refusal of an instruction requested by the defendant
to the effect that the jury must acquit, if they believed that the
person alleged to have been assaulted was injured by accident and
without evil design, or intention or malice aforethought, is without
prejudice, where other clear and explicit instructions were given
by the court as to what they must find in the way of intention and
malice aforethought before they could convict.

ID.—NEWLY DISCOVERED EVIDENCE OF INSANITY—REFUSAL OF NEW
TRIAL—APPEAL.—The refusal to grant the defendant a new trial
on the ground of newly discovered evidence on the question of

insanity, will not be interfered with on appeal, when the showing made in that behalf was not such as to warrant the appellate court in holding that the trial judge erred in concluding that the newly discovered evidence was not sufficiently strong to render a different result probable.

ID.—DOUBT OF JUDGE AS TO DEFENDANT'S SANITY—REFUSAL TO SUSPEND JUDGMENT.—The refusal of the trial judge to suspend judgment until the question of the defendant's sanity could be submitted to a jury, will not warrant a reversal when it clearly appears that the judge was without doubt as to the sanity of the defendant at the time the judgment was pronounced, and it cannot be said that his state of mind was not fully warranted by the evidence and the appearance and conduct of the defendant.

APPEAL from a judgment of the Superior Court of Marin County and from an order refusing a new trial. Thomas J. Lennon, Judge.

The facts are stated in the opinion of the court.

G. C. Ringolsky, for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, for Respondent.

ANGELLOTTI, J.—The defendant was informed against for committing an assault with a deadly weapon, with malice aforethought, while undergoing a life sentence in the California state prison at San Quentin, upon the person of one J. Wilson, a human being, being the crime defined by section 246 of the Penal Code, enacted in the year 1901. He was found guilty of the offense charged and adjudged to suffer death, as the section requires in such cases. He appeals from the judgment and from the order denying his motion for a new trial, and also from an order denying his motion to suspend judgment on the ground that he is insane. The last-named order was made prior to judgment and is not an appealable order, but the action of the trial court in such matters is reviewable on the appeal from the judgment.

The defendant was undergoing a life sentence in the California state prison at San Quentin. He succeeded in escaping from the cell in which he had been incarcerated in solitary confinement for over eight years, and armed with a portion of an iron window weight, described as being one half of

such a weight, made his way to the general dining-room of the prison. There he found Wilson, a fellow convict, one of whose duties was the cutting of bread for the prisoners. The knife used by Wilson was lying on the "bread counter" at the end of which he was standing. Defendant struck Wilson on the forehead with the window weight and immediately reached past him and picked up the knife. Wilson immediately grappled with him, and in the scuffle which ensued Wilson was cut in several places by the knife in defendant's hand. The defendant was finally overpowered and the weapon taken from him.

1. It is earnestly contended that section 246 of the Penal Code is unconstitutional. The validity of this statute has already been affirmed in three decisions of this court, *People v. Finley*, 153 Cal. 58, [94 Pac. 248]; *People v. Quijada*, 154 Cal. 243, [97 Pac. 689]; and *People v. Carson*, 155 Cal. 164, [99 Pac. 970]. Counsel for defendant presents no additional ground for holding it to be violative of any provision of our state constitution to those presented in the earlier cases, that appears to us to be well based. The reasons for the previous rulings that persons undergoing life sentence constitute a class as to which the legislature is authorized to make this particular provision are fully stated in *People v. Finley*, 153 Cal. 58, [94 Pac. 248]. It is urged here for the first time that the section is violative of section 6 of article I of our constitution, prohibiting "cruel or unusual punishments." Whatever may be our views as to the policy of this section of the Penal Code, we are not warranted in saying as matter of law that the punishment of death for an assault with a deadly weapon with malice aforethought by one undergoing a life sentence in a state prison is either "cruel" or "unusual" within the meaning of those terms as used in our constitution. The infliction of the death penalty by any of the methods ordinarily adopted by civilized people, such as hanging, shooting, or electricity, is neither a cruel nor unusual punishment. (See *In Re Kemmler*, 136 U. S. 447, [10 Sup. Ct. 930]), unless perhaps it be so disproportionate to the offense for which it is inflicted as to meet the disapproval and condemnation of the conscience and reason of men generally, "as to shock the moral sense of the people." (*People v. Morris*, 80 Mich. 634, [8 L. R. A. 685, 45 N. W. 591].) In view of what is said

in *People* v. *Finley*, as to the reasons for such provision as to the class of persons affected thereby, we are of the opinion that no such conclusion can be reached in regard to the statute under consideration. The objection that the statute is violative of the fourteenth amendment of the constitution of the United States, which has been held to be without foundation so far as this court is concerned, is involved in the Finley case, which is now pending in the United States supreme court on writ of error. Pending the determination of that case by that court, the execution of other judgments pronounced under this section should and doubtless will be deferred, so that if this court is in error in its views as to the merits of this objection, the defendant will not be prejudiced thereby.

2. For the purpose of showing that the defendant was guilty of the offense defined by section 246 of the Penal Code, it was alleged in the information that at the time of the alleged assault he was undergoing a life sentence in the California state prison at San Quentin under and by virtue of a certain described judgment of the superior court of Sacramento County. It was essential of course to allege facts showing that defendant was then undergoing a life sentence, in order to state the public offense intended to be charged. On his arraignment he was allowed, at his own request, in addition to pleading not guilty of the offense charged, to admit that he had suffered the conviction alleged in the information. He now claims that having admitted such "previous conviction" on his arraignment, the clerk of the court in reading the information to the jury on the trial should have omitted therefrom all that related thereto (Pen. Code, sec. 1093, subd. 1), and that no evidence relating to the same should have been received on the trial. (Pen. Code, sec. 1025.) The provisions of the Penal Code thus relied on by him have reference exclusively to those cases where a previous conviction of some other and distinct offense is alleged for the purpose of enabling the court to impose a greater punishment than is authorized for the offense charged when there is no prior conviction (see Pen. Code, secs. 666, 667, and 668), and can have no application where the fact of the prior conviction is an essential element of the offense charged. By his general plea of not guilty in this case defendant necessarily put in

issue all the allegations of facts essential to the offense, including the conviction upon which the judgment of life imprisonment was given, and his admission of that fact on his arraignment did not relieve the district attorney from the necessity of proving it on the trial. The record shows that he expressly refused to make any such admission on the trial.

3. The trial court allowed the district attorney to put in evidence for the purpose of showing this fact, not only the commitment of the defendant to the state prison, which is a certified copy of the judgment (Pen. Code, sec. 1213), but also all the judgment-roll in the action resulting in such judgment, except the instructions and charge of the court, thus including in addition to a copy of the judgment, the information, a copy of the minutes of the plea or demurrer, and a copy of the minutes of the trial. (Pen. Code, sec. 1207.) This evidence was declared to be received solely for the purpose of showing a valid judgment under which defendant was undergoing a life sentence. Counsel for defendant claimed that the commitment alone was sufficient proof, and that the other papers were unnecessary. Assuming this to be true, we are at a loss to see how any of the other records admitted could have prejudiced defendant's cause. The commitment showed that he was informed against for the crime of murder, pleaded not guilty, was tried and convicted of murder of the second degree and thereupon sentenced to imprisonment for his natural life. The other records admitted showed precisely the same thing and no more. There was absolutely nothing therein that could by any possibility have unfavorably affected his cause in the minds of the jurors who were acquainted with the contents of the commitment. That the record of the commitment is admissible cannot be doubted. (See *People* v. *Finley,* 153 Cal. 63, [94 Pac. 248].)

4. The information failed to specify the nature of the deadly weapon with which the assault was alleged to have been committed, alleging simply that it was done with a "deadly weapon," which is the language of the statute. This was a sufficient allegation. (*People* v. *Perales,* 141 Cal. 583, [75 Pac. 170].) As we have seen, the evidence showed the use of two weapons by defendant, a window weight and a knife. Defendant objected to the evidence tending to show the use of two weapons upon the ground that the district

attorney was endeavoring to show two offenses, that he could prove only one, and that he must elect which he relied on for a conviction. We think it is manifest that there was but a single assault shown by this evidence, even though two weapons were used. The mere fact that two weapons are used does not necessarily show two assaults. If one unlawfully assails another with his two hands, first striking at him with one hand and immediately thereafter with the other, no one would say that there were two offenses. The offense would be the one unlawful attempt, coupled with a present ability, to commit a violent injury upon the other's person, and each effort made in what constituted only the same attempt to accomplish this result would constitute only a single element of that attempt. The same thing may be true where the assailant uses two or more weapons instead of only his two hands. In *State* v. *McDonald*, 67 Mo. 13, the assault was alleged to have been made with a pair of tongs, a hammer, and an ax, all of which were alleged to be deadly weapons, and the court very properly said that this was not charging two or more assaults in one count, but one continuous assault with several weapons, which was neither impossible nor improbable. (See, also, 1 Wharton on Criminal Law, sec. 644.) The evidence offered and received in this case tended to show one continuous transaction, one assault in which two weapons were used. It was not, therefore, a case where the evidence offered showed two or more distinct offenses for each of which the defendant might be prosecuted and suffer a conviction, as was the situation in *People* v. *Williams*, 133 Cal. 165, [65 Pac. 323], and *People* v. *Castro*, 133 Cal. 11, [65 Pac. 13], and, consequently, it was not a case for election by the district attorney as to which of two offenses against the law he would rely on as constituting the offense charged in the information. He was showing simply a single assault. Defendant's real ground of complaint, if he had one, was that there was a variance between the charge and the proof, in that by the charge the assault was one made with "a" deadly weapon, while by the proof it was one made with two deadly weapons. If the district attorney had alleged the assault to have been committed with the two weapons, there could have been no ground of complaint whatever. (*State* v. *McDonald*, 67 Mo. 13.) But the variance was clearly not of such a nature as to

mislead or prejudice the defendant in the slightest degree in making his defense, and is one of those mere technicalities not affecting any substantial right that we must disregard. Possibly, the defendant, if requesting it, would have been entitled to an instruction that the jury before they could convict must all agree upon at least one specific weapon of the two as constituting a "deadly weapon" with which defendant assaulted Wilson, but no such instruction was requested and we need not definitely decide the point. It does not appear to have been questioned that the iron window weight was a deadly weapon, and there could hardly be a question, in view of the evidence, that defendant was guilty of an assault with that weapon, if he was not incapable of committing an assault by reason of insanity.

The case of *People* v. *Garcia,* 58 Cal. 102, is not at all in point. The information in that case had been made to charge two separate assaults as clearly as could be, and it was very properly held that the demurrer on that ground should have been sustained.

5. One of the defenses was that the defendant was insane at the time of the alleged assault. Mr. John W. Tompkins, warden of the prison from September 1, 1903, to February 1, 1906, was called as a witness for defendant, and testified solely to the condition of life surrounding defendant during his incumbency of the office of warden, the object clearly being to show such conditions as might produce insanity. He testified that during all of said time defendant was kept in solitary confinement in one of the small cells in the incorrigible ward, the purpose of which was to incarcerate men supposed to be beyond control, that he was prohibited from communicating with others and not permitted to receive visitors. He further said that during a portion of the time defendant had a mattress to sleep on, but by his order he was deprived of it for a few months, and also that at one time he allowed him to have reading matter and then revoked that permission. On cross-examination he was required to testify as to statements made by him to defendant as to his reasons for depriving him of reading matter and mattress, as well as for punishing him by putting him on bread and water for a time, those statements being in substance that he had used the leaves of magazines for the purpose of injuring jail property, that

he had used the mattress for the purpose of secreting implements that he had no business to have, and that he had cut a hole through the partition in his cell into the adjoining cell.

All this was clearly improper cross-examination. There was nothing in the direct examination warranting any such inquiry. The theory of the learned attorney-general that the tendency of the evidence given on direct examination was to show that defendant had been deprived of mattress and reading matter because it was thought he was insane and it was feared that he might harm himself by means thereof, and it was therefore proper to show on cross-examination that he was deprived of these privileges by way of punishment, and thus rebut the inference that the officers believed him to be insane, is very far fetched and obviously unsound. What the theory of the district attorney was in asking these questions we do not know. Of course, under elementary principles, he had no right to show that the defendant had been guilty of specific acts of misconduct which showed him to be incorrigible. But under the peculiar circumstances of this case we cannot assume that defendant may have been prejudiced by this evidence. It was one of the admitted facts of this case, in truth the very basis of the defense of insanity, that defendant had been kept in solitary confinement in the incorrigible ward for more than eight years, and there could not have been any more convincing evidence than this as to the opinion of the prison officials that he was incorrigible and absolutely beyond control. The objectionable testimony given by Warden Tompkins could not in the nature of things have added one iota to the knowledge of the jury in this respect. Its admission must be regarded, therefore, as error without prejudice.

6. Captain of the Guard Randolph was examined as a witness for defendant, and on his direct examination testified that defendant was confined in the dungeon for a time, having been put there the day of the assault on Wilson, and subsequently was carried back to the incorrigible cells and put in a strait-jacket. On cross-examination he was allowed without objection to testify that defendant had been placed in the dungeon shortly after his arrival at the prison, February 1, 1899. A question asked the witness why defendant was placed

in the dungeon on that occasion was not answered, the witness having no actual knowledge of the reason. Further, without objection, Captain Randolph testified that defendant remained in the dungeon on that occasion about a month or six weeks. Over objection, he was allowed to testify that in June of the same year he was again confined in the dungeon for a brief period, but the court very properly struck out the statement of the witness that defendant at that time "got in trouble again." We are of the opinion that the whole of this cross-examination was improper, but for the reasons given in discussing the cross-examination of Mr. Tompkins, we are satisfied that so much of it as was objected to was in no way prejudicial.

7. The trial court allowed defendant's counsel full latitude in the matter of showing conversations between defendant and others for the purpose of showing insanity, and there can be no question, in the light of the record, that counsel fully understood that the ruling of the court was that he was at liberty to introduce in evidence any conversation upon which he relied in that behalf. Testimony of conversations given by witnesses for defendant take up many pages of the record. But the court did sustain an objection to a question asked the witness Hammel, who had already testified to numerous conversations and subsequently testified to many more, as to a conversation with defendant relative to the probable disposition of his case by the board of prison directors, and this is urged as prejudicial error. There was no specific claim made in the trial court that this particular proposed evidence was important as tending to show any insanity, and counsel was allowed at once to proceed with his examination as to all conversations claimed by him to tend to show delusions or insanity of any kind. He fully understood the views of the trial court in that behalf and that he would be allowed to show any conversation he relied on in that regard. The record warrants us in assuming that this particular conversation was of no importance.

8. Captain Randolph having testified on his direct examination by defendant that, after the assault on Wilson, defendant was put in a strait-jacket, was asked by defendant: "How long did he remain in the strait-jacket?" The trial court sustained an objection to this question. The ruling was correct.

It is true, as urged by counsel for defendant, that *acts* and *declarations* of a person *subsequent* to a certain time are admissible on the question of his sanity at such time, but that was not what the question called for. The fact that he was confined by others in a strait-jacket *prior* to the assault might be legitimate evidence tending to show insanity at the time of the subsequent assault, but such confinement *subsequent* to the assault could shed no light upon the question of his condition of mind at the time of such prior assault.

9. Warden Tompkins and Mr. McGuire, called as witnesses for defendant, were both asked questions as to whether some persons confined in the incorrigible cells had not become insane while so confined. Objections to these questions were properly sustained. Defendant was allowed to show very fully the condition and mode of life of those so confined, and to introduce the evidence of experts as to the probable effect on the mind as to such conditions and mode of life. There was no pretense that it was intended to show by these non-expert witnesses anything more than the mere fact that one or two individuals became, in their opinion, insane while so confined. This was clearly irrelevant and immaterial on the issue of defendant's sanity.

10. Read in connection with the context, the instruction to the jury that "if upon the whole testimony there results to you nothing more than a mere doubt as to whether or not he was insane, you must, in that event, resolve such doubt upon the question of his insanity against him" could not have been misleading, though it might well have been omitted, for taken by itself it is perhaps not strictly and literally correct. But what it clearly meant, and what the jury would necessarily understand it as meaning, in the light of the context, was that, under the rule in force in this state, the defendant, in order to show insanity, must do something more than create a mere doubt as to his sanity, viz.: must show such insanity by a preponderance of evidence. (*People* v. *Willard*, 150 Cal. 543, [89 Pac. 124].) The jury was very clearly and explicitly instructed as to what was meant by the term "preponderance of evidence," and also that if, on the whole case, a preponderance of evidence was that he was insane at the time of the alleged assault, they must find him not guilty by reason of insanity.

11. Complaint is made of the refusal of the court to instruct the jury that they might, if the evidence warranted it, find other verdicts than those of guilty of the offense charged and not guilty, and particularly of a verdict of guilty of the lesser offense defined by section 245 of the Penal Code, the ordinary offense of an assault with a deadly weapon. A similar complaint was made in *People* v. *Carson,* 155 Cal. 164, [99 Pac. 970], and held untenable. The matter was learnedly and elaborately discussed in that case. We see no reason to recede from the views there expressed.

12. Complaint is made of the refusal of the trial court to give two requested instructions, numbered IX and XXIII. Requested instruction IX was clearly erroneous, in that it would have advised the jury that they must acquit if there was a reasonable hypothesis deducible from the evidence to the effect that Wilson was hit or struck by accident or mischance or inadvertence, without the intention of the defendant accompanying the act. In other words, if the jury was satisfied beyond all reasonable doubt that the blow with the window weight was intentionally and deliberately inflicted, but were in doubt on the question whether the cutting with the knife was accidental and not intended, they must acquit. This, of course, would not have been a correct statement of the law applicable to the facts. Requested instruction XXIII was substantially that if the jury believed from the testimony that Wilson was injured by accident and without evil design or intention or malice aforethought, they must acquit. In view of the clear and explicit instructions given by the court as to what the jury must find in the way of intention and malice aforethought before it could convict, it is clear that the refusal to give this instruction could not have affected defendant's substantial rights, and cannot be considered an error warranting a reversal, if, indeed, it can be considered an error at all.

13. The subject-matter of requested instructions XXIV and XXV, relating to the impeachment of witnesses and the powers and functions of the jury in the consideration of testimony was fully and correctly covered by the charge of the court.

14. It cannot be held that the trial court erred in refusing to grant a new trial on the ground of newly discovered evi-

dence on the question of insanity. The showing in that behalf was not such as to warrant us in holding that the trial judge erred in concluding that the newly discovered evidence was not sufficiently strong to render a different result probable. (*People* v. *Buckley*, 143 Cal. 392, [77 Pac. 169].)

15. The trial judge was clearly enough without any doubt as to the sanity of the defendant at the time judgment was pronounced. We cannot say that this state of mind on his part was not fully warranted by the evidence before him and the appearance and conduct of the defendant, and, therefore, cannot hold that he erred in refusing to suspend judgment until the question of his sanity could be submitted to a jury.

As requested by counsel for defendant, we have carefully examined the whole record, and find nothing therein warranting a reversal. Under the circumstances of this case the penalty of death may seem exceedingly severe, but that is a matter with which neither the trial court nor this court has anything to do. It is the penalty fixed by the legislature for the offense of which defendant has been convicted.

The judgment and order denying a new trial are affirmed.

Shaw, J., Melvin, J., Lorigan, J., Sloss, J., and Henshaw, J., concurred.

Rehearing denied.