## PEOPLE *v.* MIRE.

1. CONSTITUTIONAL LAW — PUNISHMENT, CRUEL AND UNUSUAL— STATUTES.

   Imprisonment of not less than 15 nor more than 30 years, for the crime of burglary accompanied with the use of high explosives, is not a cruel or unusual punishment prohibited by the State or Federal Constitution and Act No, 64, Pub. Acts 1907, creating the crime, is valid, being within the discretionary power of the legislature.

2. SAME—CRIMINAL LAW—TITLE—BURGLARY.

   The purpose of the act is sufficiently expressed by the title which describes the object as "defining the crime of burglary with explosives and providing the punishment therefor."

3. SAME.

> That it creates a crime not recognized by the common law, or
> defines burglary in a new and different way, is not a ground
> for adjudging the statute unconstitutional.

4. SAME—EQUAL PROTECTION.

> The objection that the enactment places a greater burden on
> some than on others and provides unequal protection, be-
> cause various other statutory enactments prescribe milder
> penalties for kindred offenses, included within the offense
> charged against respondent, is overruled; as is also the objec-
> tion that it is invalid because it places in the hands of the
> prosecuting attorney the authority to determine under what
> statute prosecution shall be instituted.

5. SAME—REPUGNANT STATUTES.

> Sections 11545-11548, 3 Comp. Laws, covering burglary under
> specified conditions, do not conflict with Act No. 64, Pub. Acts
> 1907, and are distinguishable, in that they do not mention
> the use of explosives.

6. SAME.

> If 3 Comp. Laws, § 11506, is, in any respect, repugnant to the
> later statute, the first enactment must be held to have been
> repealed by the subsequent law in so far as the respective
> provisions conflict.

Error to Lenawee; O'Mealey, J.   Submitted November 15, 1912.   (Docket No. 139.)   Decided December 17, 1912.

Joe Mire and three others were convicted of burglary with explosives.   Said Mire brings error.   Affirmed.

*Earl C. Michener*, Prosecuting Attorney, for the people.

*Solon T. Klotz*, for respondent.

STEERE, J.   This case comes before us on a declaration in error launched against the record, without any bill of exceptions.

Respondent was charged and convicted and sentenced in the circuit court of Lenawee county under Act No. 64, Pub. Acts 1907, which, including the title, is, in full, as follows:

"An act defining the crime of burglary with explosives and providing the punishment therefor.

"*The people of the State of Michigan enact:*

"SECTION 1. Any person who, with intent to commit crime, breaks and enters any building and for the purpose of committing any crime, uses or attemps to use nitroglycerine, dynamite, gunpowder, or any other high explosive, shall be deemed guilty of burglary with explosives, and on conviction shall be punished by imprisonment for a term of not less than 15 years nor more than 30 years.

"Approved April 25, 1907."

From the record, which includes the testimony taken on preliminary examination, counsel for the prosecution makes a statement of the case in his brief, which counsel for respondent accepts as correct and adopts and ratifies so far as the facts are concerned, not, however, admitting any of the conclusions of law therein stated. The facts contained in such statement, helpful to an understanding of the case, are, briefly, as follows: On the night of December 22, 1910, in the village of Britton, Lenawee county, Mich., the People's Bank was broken into and entered by four persons, of whom respondent was one, who blew up and practically demolished a large safe in said bank, using therefor five charges of nitroglycerine. These four persons all participated and co-operated in the perpetration of this offense. After an extrance to the building had been made, two of them stood guard on the outside armed with large revolvers, while the other two proceeded to use the explosives on the safe in the building. When officers and citizens of the village, aroused by the explosions, appeared, the two men on the outside repulsed them for a time, firing many shots in the direction of those approaching, although no one was killed. They kept those seeking to apprehend or stop them in their depredations at bay for over half an hour, and then all four of the parties thus criminally engaged withdrew together and fled. They were pursued during the night by officers and others, across the country, over fields, through woods and thickets, and finally were captured a distance of over 19 miles

from Britton. During the chase they were persistently and closely followed directly from the scene of the crime to the place of their apprehension. When arrested, respondent was heavily armed and resisted the officers. He was complained against, tried by a jury, and convicted under the statute quoted, and on January 12, 1911, sentenced by the court to the State house of correction, and branch of the State prison in the Upper Peninsula at Marquette, Mich., in compliance with the said statute and the indeterminate sentence law, for a term of not less than 15 years, minimum sentence, and not more than 30 years, maximum statutory sentence; 20 years being recommended by the court as in his judgment a proper maximum. The other offenders were also charged with a like offense, tried by jury, convicted, and each sentenced accordingly to the same institution. All four are now serving their sentences.

In behalf of this respondent, it is claimed that his conviction and sentence were without jurisdiction and void, and he should be discharged from his imprisonment, without day, because the statute under which he was prosecuted and sentenced violates the Constitutions of the United States and of this State in the particulars that it deprives him of his liberty without due process of law, does not give him equal protection under the laws, abridges his privileges and immunities as a citizen of the United States, imposes cruel and unusual punishment, and the provisions of said statute are not expressed in its title.

Certain fundamental principles, from which the arguments in respondent's behalf are built up, are well stated and elaborated in the brief of his counsel, fortified by abundant authority. They must be conceded as sound in principle and by precedent. Unquestionably if the statute, under which respondent was prosecuted and which defines the offense of which he was found guilty and prescribes the punishment administered, is unconstitutional and void, the court was without jurisdiction to

act, and the prisoner should be discharged.   If this stat-
ute places a greater burden upon one than upon another,
and does not give equal protection to all under like cir-
cumstances, denying to one rights which are accorded to
others and inflicting upon one individual a more severe
penalty than is imposed upon another in like case offend-
ing, if its object is not expressed in its title, or if it pre-
scribes cruel and unusual punishment, it is unconstitu-
tional and void, and it follows that the accused was de-
prived of his liberty without due process of law.

The punishment prescribed in the act in question is im-
prisonment, a most common and usual method of punish-
ment the world over.   The claim that it is cruel and un-
usual must of necessity be directed, not to its nature, but
to its limits of time, "not less than 15 years nor more
than 30."   That class of cruel and now unusual punish-
ments at one time sanctioned and prevalent under the
common law of England, such as burning at the stake,
drawing and quartering, mutilation, starvation, and lesser
forms of physical torture, to which the constitutional pro-
hibitions were primarily directed, is not involved here.
Approaching the dividing line, the inquiry as to what
does in any particular case constitute cruel and unusual
punishment under the constitutional provisions, turns, not
only upon the facts, circumstances, and kind of punish-
ment itself, but upon the nature of the act which is to be
punished.

The most serious part of the crime defined in this statute,
and the especial depravity which is to be punished, is
manifestly the use of high explosives in a building as an
agency to facilitate the perpetration of a felony, a branch
of criminal activity regarded with increasing disfavor
since the time of Guy Fawkes and steadily becoming
more dangerous, more easily resorted to, a greater menace
to organized society and more fear-inspiring with the de-
velopment in kinds, strength, facilities in handling and
use of those deadly agencies.   The ease with which they
can be procured and applied and the common knowledge

of methods obtained from their general use in legitimate lines has resulted in an alarming increase of their application to unlawful ends. The results of their criminal use, like the use of fire in arson and the scattering of poisons, are not to be foreseen, and are often far-reaching, beyond the crime intended. As the intentional firing of a hovel may result in the unintentional burning of a city, so the intentional dynamiting of a building for revenge or as a warning to the owner, or the use of explosives to obtain access to the interior of a vault or safe, may cause the unintentional destruction of many lives. The viciousness of the crime is not only in the actual or intended result, but in the possible and unknown result. It can legitimately be inferred that the legislature enacted this new law with reference to the growing activities in that branch of criminal endeavor.

"It will be conceded that the legislature has the constitutional power to fix the minimum as well as the maximum of the punishment. It has also the exclusive jurisdiction to define 'crime' and prescribe the punishment. It is supposed to represent the sentiment and wishes of the people." *People* v. *Morris*, 80 Mich. 641 (45 N. W. 591, 8 L. R. A. 685).

"The legislature is ordinarily the judge of the expediency of creating new crimes and prescribing penalties, whether light or severe, for prohibited acts." *Commonwealth* v. *Murphy*, 165 Mass. 66 (42 N. E. 504, 30 L. R. A. 734, 52 Am. St. Rep. 496).

We are not prepared to hold that the punishment prescribed in this act does not fit the crime, or that the minimum punishment, which is the test, should be regarded as so unusual and cruel, and so disproportionate to the offense as to shock the moral sense of the public.

A question somewhat analogous to this was raised in *People* v. *Morris, supra*, which involved a statute prescribing a particularly severe punishment for horse thieves, who were said to have become specially active and obnoxious at the time of the passage of the act. The court there said:

" When a statute is challenged as in conflict with the fundamental law, a clear and substantial conflict must be found to exist to justify its condemnation.   *   *   *   It is argued that under this law a prisoner must be sentenced from three to fifteen years, while under other statutes, for the larceny of property of the same value, he could only be imprisoned for one year.   This is not a fair or legitimate test.   Our statutes, and so probably the statutes of all the States, recognize this distinction.   Under our statutes, larceny from the person, larceny from a dwelling house, or at a fire, may be punished by imprisonment for five years.   The cashier or any officer or servant of a bank, who takes any of the property intrusted to his care, and thereby commits larceny, may be imprisoned for ten years.   Any officer, clerk or person employed in the State treasury may, for larceny therefrom, be imprisoned for fourteen years.   So, too, any person who shall, at the same term of court, be convicted of three distinct larcenies, may be imprisoned for fifteen years.   In all these cases the property stolen may not exceed the value of a dollar.   It has never been contended that any of the punishments imposed by these statutes were cruel or unusual."

We think the objection that the law is unconstitutional because the object of the act is not expressed in its title is not tenable.   The title describes the act as "defining the crime of burglary with explosives and providing the punishment therefor."   The one short paragraph constituting the body of the act is devoted exclusively to that subject and purpose.   That the statutory burglary there defined varies from the definition of common-law burglary and is to some extent a departure from the principles which underlie the ancient law on that subject does not militate against the act.   As already observed, it is within the constitutional power of the legislature to create and define the elements which constitute new crimes, and to name them as it sees fit.

The claim that this act is unconstitutional because it places a greater burden on one than upon another, does not give equal protection to all, and inflicts on one greater penalty than on another, is based upon the fact that there

are several kindred acts in this State, prescribing a less severe punishment, which include, to a greater or less extent, elements of the offense created by the act under which respondent was convicted. As a consequence, it is said the legislature has so arranged these laws that the prosecuting attorney may at will choose the one under which he will proceed, and thus decide the penalty to be inflicted upon the accused, usurping in effect the power of the court to exercise its discretion in pronouncing sentence. The prosecuting attorney has been declared by this court to be a quasi judicial officer, and is vested with certain discretionary powers in the administration of the criminal law. As was pointed out in *People* v. *Morris, supra,* the laws of this State, as well as of other States, present numerous cases of similar statutes covering allied offenses and degrees of offense, like the different forms of assault and of larceny, in which the nature of the case might render it possible for the prosecutor to bring any one of several different charges against the accused. So long as these laws are not repugnant, they are not invalid because the accused could have violated more than one of them at the same time in a certain transaction.

It is claimed, however, that said Act No. 64, under which respondent was convicted, is repugnant to sections 11545–11548, and particularly section 11506, 3 Comp. Laws; the latter section covering the identical offense of which respondent was convicted, and which prescribes a much lighter minimum punishment than the one under which he was charged. Sections 11545–11548 of said 3 Comp. Laws define, grade, and fix the penalty for various forms of statutory burglary, covering breaking and entering, entering without breaking, in the nighttime and in the daytime, armed and unarmed, with and without making an assault, a dwelling house or other prescribed buildings, occupied and unoccupied, committing or attempting to commit, under the various conditions enumerated, different stated crimes. In none of these sections is any mention made of the use

of explosives.   They are readily distinguishable from, and not repugnant to, the statute in question.

Section 11506, entitled "An act relating to the punishment of bank, safe and vault robbery," is as follows:

"SECTION 1.  *The people of the State of Michigan enact*, that whoever, with the intent to commit the crime of larceny, or any felony, shall confine, maim, injure or wound, or shall put in fear any person for the purpose of stealing from any building, bank, safe, or other depository of money, bonds, or other valuables, or shall by intimidation, fear, or threats compel, or attempt to compel any person to disclose or surrender the means of opening any building, bank, safe, vault, or other depository of money, bonds, or other valuables, or shall attempt to break, burn, blow up, or otherwise injure or destroy any safe, vault, or other depository of money, bonds, or other valuables in any building or place, shall, whether he succeeds or fails in the perpetration of such larceny or felony, be punished by imprisonment in the State prison for life or any term of years."

This statute was enacted in 1877, 30 years before said Act No. 64.   If yet in force in all its provisions, it would seem clearly applicable to the facts in this case, and the prosecuting attorney could properly have charged the respondent with a violation of the older statute, under which his minimum sentence might be but two years. The act, however, does not in the portion relating to the use of explosives specifically make the breaking and entering of a building with intent to commit crime an ingredient of the offense, nor name the various high explosives, the use of which shall constitute the crime of "burglary with explosives," as does said Act No. 64.   Under the older law, respondent could be convicted without proof that he broke and entered a building with intent to commit crime, if it were shown he at any time or anywhere attempted to break, burn, blow up, etc., for the criminal purposes charged, while under the later law he could not.

When acts are *pari materia*, though enacted at different times and not referring to each other, they are to be taken and construed together, as explanatory of and sup-

plemental to each other, and sustained, if possible, in order to effectually carry out the legislative intent and produce a consistent and harmonious system. In the disposition of this case, it is not necessary to determine whether or not such a result can be reached here, and both statutes sustained. Conceding that said section 11506, passed in 1877, is inconsistent with, and repugnant to, said Act No. 64, passed in 1907, and applying the rule of construction which obtains in such cases, the later law prevails, and the earlier falls.

"It is a principle of universal application in the construction of statutes that, if two legislative provisions are found to be inconsistent, the court in construing them will give effect to the later expression of legislative will. Therefore, if two statutes make inconsistent provisions for the punishment of the same act, the later repeals the earlier. * * * In the absence of an express repealing clause, a subsequent statute repeals a former one only so far as the two are inconsistent." 1 McClain on Criminal Law, §§ 91, 92.

This is an old and long established doctrine. In the early case of *Rex* v. *Cator*, 4 Burr. p. 2026, it appeared that two statutes had been enacted punishing the offense of enticing away artificers to foreign parts. The earlier act imposed a punishment not exceeding £100 and imprisonment of 3 months for the first offense, and for a second offense a fine in the discretion of the court, and imprisonment for 12 months. The later statute, defining the same offense, imposed a forfeiture of £500 and imprisonment for 12 months for the first offense, and for the second a forfeiture of £1,000 and imprisonment for 2 years. It was held that the second statute repealed the first, the court saying:

"By the latter act, there is no discretion left in the court. The punishment directed in it is peremptory."

It has also been held where two acts of different dates, covering the same offense, are found upon the statute books, that when the legislature imposed in the second

act a different punishment for the offense, whether it be smaller or larger than the former one, the former is repealed by implication. *Nichols* v. *Squire,* 5 Pick. (Mass.) 168. This subject has been reviewed and numerous authorities cited in *Commonwealth* v. *Davis,* 77 Mass. (11 Gray) 48, wherein a former statute defining and providing the punishment for maintenance of a disorderly house was held to have been repealed by a subsequent statute upon the same subject prescribing more severe penalties.

In the case at bar, if, as claimed by respondent, the two statutes under consideration cover identically the same offense, providing a different and greater punishment in the later, the earlier is repealed, and therefore said Act No. 64 of the Public Acts of 1907, under which respondent was convicted and sentenced, stands alone, as the only law in this State under which he could be prosecuted for such offense.

For these reasons, we are constrained to hold that said act is constitutional and valid, that the court pronouncing sentence was not without jurisdiction, and the judgment must stand affirmed.

MOORE, C. J., and MCALVAY, BROOKE, STONE, OSTRANDER, and BIRD, JJ., concurred. KUHN, J., did not sit.