# Order

**Michigan Supreme Court**
**Lansing, Michigan**

December 16, 2010

Marilyn Kelly,
Chief Justice

Michael F. Cavanagh
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Diane M. Hathaway
Alton Thomas Davis,
Justices

141388

PEOPLE OF THE STATE OF MICHIGAN,
        Plaintiff-Appellee,

v                                                              SC: 141388
                                                               COA: 290271
                                                               Oakland CC: 2008-221670-FC

EDWIN CORREA,
        Defendant-Appellant.

_____/

On order of the Court, the application for leave to appeal the May 18, 2010 judgment of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the questions presented should be reviewed by this Court.

MARKMAN, J. (*concurring*).

I concur in this Court's decision to deny leave to appeal. However, I take this opportunity to express my concerns regarding this Court's decision in *People v Bullock,* 440 Mich 15 (1992), and its establishment of proportionality review of criminal sentences under Const 1963, art 1, § 16, which provides that "cruel or unusual punishment shall not be inflicted." *Bullock* held that proportionality is a component of "cruel or unusual" punishment even though as early as 1890, this Court had rejected such an understanding of the Constitution. *People v Morton,* 80 Mich 634 (1890). As this Court explained in *Morton*:

> Counsel for defendants claims that, as properly understood, it means, when used in this connection, punishment out of *proportion* to the offense. If by this is meant the *degree* of punishment, we do not think the contention correct. . . . "We first find the injunction against cruel and unusual punishment in the Declaration of Rights, presented by the convention to William and Mary before settling the crown upon them in 1688. That declaration recites the crimes and errors which had made the revolution necessary. These recitals consist of the acts only of the former king and the judges appointed by him, and one of them was that 'illegal and cruel

punishment had been inflicted.' * * * The punishments complained of were the pillories, slittings, and mutilations which the corrupt judges of King James had inflicted without warrant of law, and the declaration was aimed at the acts of the executive; for the judges appointed by him, and removable at pleasure, were practically part of the executive. It clearly did *not* then refer to the *degree* of punishment, for the criminal law of England was at that time disgraced by the infliction of the very gravest punishment for slight offenses, even petit larceny then being punishable with death. But the declaration was intended to forbid the imposition of punishment *of a kind* not known to the law, or not warranted by the law." [*Id.* at 638 (citation omitted) (emphasis added).]

The Court then proceeded to quote from Justice COOLEY:

"Probably any punishment declared by statute for an offense which was punishable in the same way at the common law could not be regarded as cruel or unusual, in the constitutional sense. And probably any new statutory offense may be punished to the extent and in the *mode* permitted by the common law for offenses of similar nature. But those degrading punishments, which in any state had become obsolete before its existing constitution was adopted, we think may well be held forbidden by it as cruel and unusual. We may well doubt the right to establish the whipping-post and the pillory in states where they were never recognized as instruments of punishment, or in states whose constitutions, revised since public opinion had banished them, have forbidden cruel and unusual punishments. In such states the public sentiment must be regarded as having condemned them as cruel, and any punishment which, if ever employed at all, has become altogether obsolete, must certainly be looked upon as unusual." [*Id.* at 638-639 (citation omitted) (emphasis added).]

The Court then concluded that because "[i]mprisonment for larceny is, and always has been, in this country and in all civilized countries, one of the *methods* of punishment," it does not violate the cruel or unusual punishment clause. *Id.* at 639 (emphasis added).

While "the Clause disables the Legislature from authorizing particular forms or 'modes' of punishment -- specifically, cruel methods of punishment that are not regularly or customarily employed[,]" the Clause "contains no proportionality guarantee[,]" and, thus, "'the length of the sentence actually imposed is purely a matter of legislative prerogative.'" *Harmelin v Michigan,* 501 US 957, 976, 965, 962 (1991) (opinion of

Scalia, J., joined by Rehnquist, C.J.) (citation omitted).[1] Indeed, "to use the phrase 'cruel and unusual punishment' to describe a requirement of proportionality would have been an exceedingly vague and oblique way of saying what Americans were well accustomed to saying more directly." *Id.* at 977. "[T]he Clause does not expressly refer to proportionality or invoke any synonym for that term, even though the Framers were familiar with the concept, as evidenced by several founding-era state constitutions that required (albeit without defining) proportional punishments." *Graham v Florida,* 130 S Ct 2011, 2044 (2010) (Thomas, J., dissenting); see also generally, *Solem v Helm*, 463 US 277 (1983); *Ewing v California*, 538 US 11 (2003).

Furthermore, "[w]hile there are relatively clear historical guidelines and accepted practices that enable judges to determine which *modes* of punishment are 'cruel and unusual,' *proportionality* does not lend itself to such analysis." *Harmelin,* 501 US at 985 (emphasis in the original). That is, I fail to see how I, as a judge, am any more qualified than the Legislature, as the representative body of the people, to determine the proportionality of a sentence. In her concurring in part and dissenting in part opinion in *Bullock,* 440 Mich at 63-64, Justice RILEY quoted from the amicus curiae brief of the Prosecuting Attorneys Association of Michigan:

"[I]f 'evolving standards of decency' as to the appropriate (proportionate) sentence for a crime are to be the measure of the constitutionality of a legislatively set penalty, how is such an inquiry to be carried out? What is the measure? What informs the judgment? What tools does a court have to make it? What enables a court to overrule society's expression of its 'standard of decency,' communicated through statute, imposing a different standard, which is also supposed to be *society's* standard and not the court's? Would not the court's role be to *discover* or *identify* society's 'standard of decency'-- not what it should be, but what it *is*, and how better could society express [its] standard of decency than through its elected lawmakers? The alternative . . . for the judiciary is that 'it is for *us* (the judiciary) to judge, not on the basis of what we perceive the Eighth Amendment originally prohibited, or on the basis of what we perceive the society through its democratic processes now overwhelmingly disapproves, but on the basis of what we think 'proportionate' and 'measurably contributory to acceptable goals of punishment'-- to say and mean that, is to replace judges of the law with a committee of philosopher-kings. *Standford v Kentucky* [492 US 361, 379; 109 S Ct 2969; 106 L Ed 2d 306, 324 (1989)].' [Opinion of Scalia, J., emphasis in original.]"

---

[1] US Const Am VIII prohibits the infliction of "cruel *and* unusual punishments." (Emphasis added.) The relevance of the distinction between "and" and "or" in the United States and Michigan constitutions, respectively, was at issue in *Bullock*.

As Justice Thomas recently explained in responding to the majority's admittedly "independent" "moral" determination that the constitution does not permit a juvenile offender to be sentenced to life in prison without parole for a non-homicide offense:

> I am unwilling to assume that we, as members of this Court, are any more capable of making such moral judgments than our fellow citizens. Nothing in our training as judges qualifies us for that task, and nothing in Article III gives us that authority. [*Graham,* 130 S Ct at 2043 (Thomas, J., dissenting).]

And as Justice Scalia also remarked,

> [T]he Court having pronounced that the Eighth Amendment is an ever-changing reflection of 'the evolving standards of decency' in our society, it makes no sense for the justices then to *prescribe* those standards rather than discern them from the practices of our people. [*Roper v Simmons*, 543 US 551, 616 (2005) (Scalia, J., dissenting) (emphasis in the original).]

"Proportionality review . . . threatens to undermine the democratic process by preventing the legislative branch from performing one of its most basic functions--defining crime and punishment." Casenote: Atkins v Virginia: *Nothing Left of the Independent Legislative Power to Punish and Define Crime*, 11 George Mason L Rev 805, 876 (2003).

Because imprisonment is not a cruel or unusual method of punishment, the Court of Appeals did not err in holding that defendant's minimum sentence of 25 years in prison does not violate the cruel or unusual punishment clause. For that reason, I concur in this Court's decision to deny leave to appeal. However, at some point, this Court should revisit *Bullock*'s establishment of proportionality review of criminal sentences, and reconsider Justice RILEY's dissenting opinion in that case.

CORRIGAN and YOUNG, JJ., join the statement of MARKMAN, J.

KELLY, C.J., and CAVANAGH, J., would grant leave to appeal.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

December 16, 2010

_Corbin R. Davis_
Clerk

s1209